### CROWLEY *v.* LANGDON.[1]

1. CHATTEL MORTGAGES—MATURITY—PAROL EVIDENCE.
   A mortgage on a stock of goods, containing provisions looking to a continuance of the business by the mortgagor, the furnishing of more goods on credit by the mortgagee, the insuring and replenishing of the stock, and the payment of interest on the debt secured, but not specifying the time when such debt shall become due, cannot be said to be due presently, and hence parol evidence is admissible to show the date of maturity.

2. SAME—FRAUD—RESCISSION.
   A chattel mortgage given in consideration of the promises of the mortgagee to extend the time of payment of the debt secured, and to grant a further credit to the mortgagor, which promises the mortgagee at the time had a fixed intention not to perform, may be avoided by the mortgagor on the ground of fraud.

3. SAME—TRUSTS—RIGHTS OF BENEFICIARIES.
   All of the beneficiaries in a trust mortgage are bound by the fraudulent representations made by a part of them to induce the giving of the security.

4. SAME—BREACH OF CONDITIONS—INSURANCE.
   The failure of a mortgagor of chattels to assign an insurance policy thereon to the mortgagee, as required by the terms of the mortgage, due to the fact that the policy was in the possession of the mortgagee's agent, cannot be relied on by the mortgagee as a breach of condition of the mortgage.

[1] Rehearing denied July 19, 1901.

5. SAME—INSECURITY CLAUSE—GOOD FAITH OF MORTGAGEE.

Whether a mortgagee of chattels was justified in taking posses-
sion under the " insecurity clause " in the mortgage is a ques-
tion for the jury, where there is testimony tending to show
that the security was adequate.

6. SAME—DEPRECIATION IN STOCK.

Where a mortgage on a stock of goods gives the mortgagee the
absolute right to take possession of the stock in case of the
mortgagor's failure to maintain it at a stated value above the
mortgage debt, such right cannot be made to depend on the
mortgagee's belief that he was insecure.

7. SAME—REPLEVIN—SPECIAL QUESTIONS TO JURY.

In replevin by a mortgagee, a request for a special finding by
the jury as to whether the goods would have brought, "at
public auction," more than the mortgage debt, is properly
refused.

8. CONTRACTS—CONSIDERATION—EXTENSION OF TIME.

The purchase by a partner of his copartner's interest in the
firm assets, the assumption by the former of the firm debts,
and the execution by him of a chattel mortgage to secure the
same, constitute a sufficient consideration for an extension of
time for the payment of such debts.

Error to Ionia; Davis, J. Submitted March 8, 1901.
Decided June 4, 1901.

Replevin by Joseph J. Crowley, trustee, against Henry
C. Langdon. From a judgment for defendant, plaintiff
brings error. Reversed.

*S. L. Merriam* and *Chaddock & Scully*, for appellant.

*Morse & Locke* and *F. A. Lyon*, for appellee.

HOOKER, J. The plaintiff, after demand, replevied
from the defendant a stock of goods, claiming a right to
their possession by virtue of a chattel mortgage executed
and delivered to him by the defendant. He makes claim
to a right of possession under his mortgage upon two
grounds, viz.: *First*, that the mortgage was due and
unpaid; *second*, that he felt insecure by reason of defend-
ant's failure to comply with the terms of the mortgage as

to insurance, and his failure to replenish the stock as pro-
vided in the mortgage. Defendant answered these claims
by the contentions: *First*, that the mortgage was not
due; and, *second*, that it was obtained by fraud. To
sustain the first of these defenses, counsel claimed upon
the trial the right to show by parol that the payment of
the installments of the sum secured by said mortgage was
postponed for periods of three, six, and nine months. To
this it was objected that the mortgage fixed the maturity
of said sum, and that its terms were not subject to change
by parol evidence. The learned circuit judge admitted
the testimony.

The mortgage contains some recitals which indicate
that it was the culmination of negotiations between the
parties; but that is nothing unusual, as it is necessarily
true of all mortgages. These recitals become significant,
however, for the reason that the mortgage did not in
express terms fix the time when the debt then existing
and secured by it should become due, and counsel claim
that they imply an understanding that it should not become
immediately due, according to the ordinary rule in cases
where the mortgage fails to specify the date of maturity,
but that the mortgagor should have a period of credit;
and, that being so, parol testimony was admissible to show
the agreement of the parties in that regard. The facts
which he was permitted to show are, briefly, that Huff
and the defendant were copartners in a mercantile busi-
ness in the village of Portland, and were indebted to the
persons for whose benefit this mortgage was subsequently
made. Trouble having arisen between the copartners,
Huff commenced a suit in the Ionia circuit, in chancery,
to wind up the affairs of the firm, and prayed for the ap-
pointment of a receiver. The defendant thereupon went
to Detroit to consult with some of the creditors of the firm,
and at a meeting of the creditors it was determined that
they should be represented at Ionia on the day set for the
hearing of the application for a receiver, and at that time
counsel representing four of the heavier creditors were

present. A consultation was had between counsel and this defendant, wherein it was arranged that the latter should buy Huff's interest, and assume the debts of the firm, and that the creditors should release Huff, and take the defendant's chattel mortgage for their claims. Huff was to assign his interest to the defendant. The defendant claims that, in consideration of his agreement to this arrangement, the time for the payment of the sums due creditors was to be extended for periods of three, six, and nine months; that they, or some of them, were to continue to sell him goods on credit, and he was to be permitted and aided to continue the business. Among the recitals and provisions of the mortgage are the following:

"*Whereas*, the said party of the first part is justly indebted unto the said party of the second part, trustee, in the sum of fifty-one hundred dollars; and *Whereas*, the said party of the first part expects to buy from said parties of the second part, from time to time during the continuance of this mortgage, goods on time, and on such terms of credit as may be agreed upon; and *Whereas*, the indebtedness of the said party of the first part to said parties of the second part is therefore liable to change in amount and time of payment; and *Whereas*, the said party of the first part has agreed that the payment of the existing indebtedness of the said party of the first part to the said parties of the second part, and also the payment of the other indebtedness for goods to be purchased by the said party of the first part from the said parties of the second part, shall be secured in the manner hereinafter mentioned:

"*Now, therefore,* this indenture witnesseth that in the pursuance of said agreement, and in consideration of the premises, the said party of the first part does hereby, for himself, his heirs, executors, administrators, and assigns, covenant and agree that the said party of the first part, his heirs, executors, and administrators, will pay to the said party of the second part, his executors, administrators, or assigns, or his successors, the said sum of fifty-one hundred dollars; and that the said party of the first part will pay to the said parties of the second part such bills, notes, and accounts as shall (hereafter) be made, at such time and times as they shall become due."

It then conveyed to Crowley, as trustee, all of the stock, fixtures, etc., including future accessions that "may be owned or possessed by him and added to said stock during the continuance of this agreement, and until payment in full of all sums of money, and the interest thereon, herein and hereby to become due and payable:

"*Provided always,* and these presents are upon this express condition, that if the said party of the first part shall pay or cause to be paid to the said party of the second part, his executors, administrators, or assigns, the said sum of fifty-one hundred dollars, with the interest thereon at six per cent. per annum until paid, at the times hereinbefore set forth, and shall also pay or cause to be paid all bills, notes, and accounts hereinafter made by said party of the first part to said party of the second part during the continuance of this agreement, as the same shall become due, respectively, together with the interest thereon, then these premises shall cease, and will be null and void.

"It is hereby expressly agreed that the said party of the first part, his executors, administrators, and assigns, shall keep the stock on hand replenished as fast as sold out, as nearly as may be, so that the stock on hand shall at no time be worth less than seventy-five per cent. more (if inventoried at cost price) than the entire indebtedness from time to time existing.

"And it is also agreed by and between the parties hereto that the said party of the first part shall and will keep the said goods, wares, merchandise, material, fixtures, furniture, and personal property, including all such as shall be added, after-acquired, or substituted, insured against loss and damage by fire, by insurers and in amount approved by said party of the second part, and assign the policy and certificate thereof to said party of the second part; and in default thereof it shall be lawful for the said party of the second part to effect such insur ance, and the premiums paid for effecting the same shall be a lien on said goods, wares, merchandise, materials, fixtures, furniture, and personal property, including all such as may be added, after-acquired, or substituted, in addition to the amount secured by these presents, and payable on demand, with interest at the rate of ten per cent, per annum.

"It is hereby expressly agreed that should the said party of the first part neglect or refuse to keep up the

stock, so that the value thereof shall not be as high as the standard hereinbefore stated, then and from thenceforth; or should he neglect to insure as hereinbefore provided, then and from thenceforth; or should default be made in the payment of any such bills, notes, accounts, or indebtedness on any day whereon the same are made payable, and should the same remain unpaid and in arrears for the period of —— days, then and from thenceforth; or should the said party of the second part deem the claim hereby secured to be in jeopardy, then and from thenceforth,—that is to say, in any one of these events the entire amount secured by these presents shall, at the option of the said party of the second part, his executors, administrators, or assigns, be due and payable immediately thereafter, notwithstanding anything to the contrary thereof herein or elsewhere stated :     *     *     *

"*Provided, always*, that until default in or violation of one of the covenants or agreements herein contained, or until the whole amount is declared to be due by reason of anything herein contained, said party of the first part, his executors, administrators, or assigns, may possess, sell, use, and enjoy in the usual and regular course of retail trade, without any disturbance or interference by the said party of the second part, his executors, administrators, or assigns, all the goods, wares, merchandise, materials, fixtures, furniture, and other personal property in this indenture mentioned, including all which may be added, after-acquired, or substituted."

It is noticeable that this mortgage does not, in express terms, state when the sum of $5,100 should be paid. It not only does not say that it shall be due presently, but, on the contrary, clearly implies that it shall not. It provides for interest on the $5,100 "until paid, at the times hereinbefore set forth;" yet no time is set forth. It contemplates the furnishing of more goods on credit, the continuance of a business, the payment for future purchases at the time when the bills should become due, the insurance and replenishment of the stock, and the right of the mortgagor to the possession of the stock, and to sell from it in the course of trade. We think these things overcome the presumption that the sum was understood by the parties to be immediately due, which sometimes

arises. It then becomes competent to show when the same was to become due by parol evidence of the agreement of the parties in relation thereto, it being competent to supply the *omitted terms* of the contract in that way. *Bird* v. *Pope*, 73 Mich. 491 (41 N. W. 514); *Stahelin* v. *Sowle*, 87 Mich. 133 (49 N. W. 529); *Mouat* v. *Montague*, 122 Mich. 334 (81 N. W. 112). We think, therefore, that it was not error to allow the introduction of proof upon that subject, or to submit that question to the jury. This did not invalidate the mortgage, which remained a valid mortgage, upon which $5,100 would at some time become due, which, according to defendant's claim, might be at any time after a failure to pay the first installment; but it precludes plaintiff from sustaining his replevin upon the ground that the mortgage was due presently.

Upon the theory that the contract and mortgage were valid and binding, the purpose of this parol evidence is limited to the subject of the maturity of the mortgage, because that is the only matter that was left uncertain. The mortgage being in all other respects certain, such proof would tend to alter or contradict, instead of explaining, it, and was, therefore, inadmissible for such a purpose. In other words, while all of the testimony introduced may have been competent for the one purpose, it had no other office than to make certain the time of payment, except as it bears on the question of fraud to be discussed. The case of *Phelps* v. *Abbott*, 114 Mich. 88 (72 N. W. 3), is in point. The mortgage, made certain by the parol proof as to maturity, fixes definitely defendant's obligation, and the plaintiff's rights under it. While the latter was not authorized to seize the property on the ground that the mortgage was due, he might lawfully take it for a breach of other conditions, if there were such. There are, obviously, but two grounds of defense to such a claim, viz.: *First*, to disprove the breach of condition; and, *second*, to invalidate the mortgage altogether upon the ground of fraud. Counsel attempt both.

The fraud alleged in this case rests upon the following facts, being in substance: That the mortgage was in part the consideration for various privileges and rights on the part of the defendant, said to have been agreed upon by the parties. They were: *First*, that the defendant should have an extension of time upon the indebtedness of the firm, which he assumed the whole burden of; *second*, that he should be aided in continuing the business, and permitted to buy goods upon credit from the plaintiff, and to sell the mortgaged property in due course of retail trade. That, being encouraged in the belief that these arrangements would be faithfully observed by the plaintiff, he executed and delivered the mortgage, thus putting it in the power of the plaintiff to dispossess him at will. The claim is made that the plaintiff did not intend to carry out this understanding; that it was, on the contrary, his intention to procure this mortgage, and then at once refuse further credit, and in a short time take the property, on the claim that there had been a breach of the conditions of the mortgage.

The great difficulty with this claim is that it is not clear that the alleged fraud or deceit consists in misrepresentation of existing facts, and amounts to no more than a failure to keep promises, which is said not to constitute fraud; and this question is not a new one. The rule is that, to constitute a fraud that should justify the courts in treating a contract as void, the misrepresentation "must be of a fact at the time or previously existing, and not a mere promise for the future." See 8 Am. & Eng. Enc. Law, p. 636, and cases cited. But, in the language of Mr. Justice Cooley, "A promise is sometimes the very device resorted to for the purpose of accomplishing the fraud, and the most apt and effectual means to that end." Cooley, Torts, 487. "But, where the promise is made with an existing intent not to keep it, the case is not within the rule. The promise to pay for goods purchased is equivalent to the assertion of an intent to pay, and, where an opposite intention is established, the misrepresentation of

an existing fact is made out." Id.; *Laing* v. *McKee*, 13 Mich. 124 (87 Am. Dec. 738). The fraud in such cases consists in the active intent to deceive, accompanied by the insincerity of the promise. This is well stated in Clark, Cont. 333; Id. 327, 328, and cases cited. It was competent to leave to the jury the question whether the plaintiff's mortgage was obtained under promises, which the persons conducting the negotiations had a well-defined intention not to perform, to the injury of the defendant. If so, the arrangement was fraudulent, and voidable at the option of the defendant, and the mortgage no better, in the hands of the trustee, than it would have been in the hands of those who procured it, if he did not himself participate in the negotiation. All claiming any benefit under it must do so subject to the equities and rights of the parties to the transaction. It is not negotiable paper, nor, so far as we discover from this record, can there be said to be any question of estoppel in the case.

If this mortgage was a valid contract, and not vulnerable by reason of fraud, the plaintiff had the right to take the property in case the defendant did not comply with its terms as to insurance or replenishment. He also had a right to take it under the general insecurity clause. The jury found a verdict for the defendant, and, as we cannot say as a conclusion of law that this was right or wrong, inasmuch as it involves disputed facts, we must examine the rulings of the court and his instructions to the jury.

Counsel maintain that this defendant had full possession of his faculties, and was bound to know the law, had an opportunity to read the mortgage, and must be held to have known his rights under it. We agree with counsel that he cannot now be heard to say that it does not embrace the contract (except, as we have said, as relates to the time of payment); but we cannot say that the court erred in admitting proof upon that subject, and permitting the jury to find that it had not matured; nor are we prepared to say that it was error, if, as plaintiff's counsel claim, his language must be considered equivalent to an

instruction that, upon its face, the mortgage showed that the amount was not immediately due.

At the time of the transaction, insurance to the amount of $5,000 was carried upon the stock. Defendant was asked to have it assigned, and caused $4,000 of it to be assigned. A policy for $1,000 was not assigned, because it could not be found, although defendant asked the agent to permit assignment before he knew of its absence. It was claimed by the defendant that plaintiff's agent had taken it; and the court instructed the jury that, "if defendant perfected the insurance of the goods for plaintiff's benefit immediately to the amount of $4,000, and was prevented from assigning the other $1,000 of insurance because of the taking of the policy by Cudworth, the agent of plaintiff, then plaintiff could not take possession of the stock under the insurance clause of said mortgage." We think this was not an error.

It is said the court erred in not instructing the jury that the plaintiff was justified in taking possession under the general "insecurity clause;" but we think this is not so. The question of his good faith is in the case, inasmuch as there was testimony indicating that the security was not inadequate. See *Woods* v. *Gaar, Scott & Co.* 93 Mich. 143 (53 N. W. 14).

In this connection we may allude to the provision that the stock should be replenished, and kept at an amount equaling, at cost price, 175 per cent. of the indebtedness. This was a valid condition, and gave an absolute right to the plaintiff to take possession if not complied with. It did not depend upon his belief as to insecurity. It was not proper to allow the jury to find that such was not the contract of the parties. The mortgage explicitly said it was, and, as already indicated, the only way of getting rid of the binding force of the certain and definite provisions of the mortgage was to show fraud in its procurement. It was, therefore, erroneous to make plaintiff's right to possession depend upon his belief that he was insecure, as he had the arbitrary right to take possession if the stock was

allowed to fall below the prescribed value for more than two days.

Counsel asked that the jury be required to find specially upon the following question:

"Was the true market value of the entire stock and fixtures and accounts in question on the 13th day of December, 1899, the day the writ in this case was served, if sold at public auction in bulk, more than $5,110.60?"

The value of the property was a proper subject for a special question, but, being limited to the price it would bring at public auction, a refusal to submit the question was proper.

We have no doubt that the arrangement between the parties was based upon a sufficient consideration.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.