HI-WAY MOTOR COMPANY v INTERNATIONAL HARVESTER
·COMPANY

Docket No. 56828. Argued April 6, 1976 (Calendar No. 13).—Decided
December 21, 1976.

Hi-Way Motor Company and William J. Pinkerton, Sr., president
of the company, brought an action in Alpena Circuit Court,
Philip J. Glennie, J., against International Harvester Company
for damages resulting from fraudulent misrepresentations and
a rescission of a franchise agreement. The plaintiffs alleged
that employees of the defendant orally represented to Pinker-
ton that his franchise agreement with the defendant was to be
an exclusive one in the Alpena area as long as he did a
reasonable sales job. When the defendant later granted another
dealer in the area the right to sell a certain truck, Pinkerton
unilaterally terminated the franchise agreement. The circuit
court gave a judgment for plaintiffs. Pinkerton subsequently
died, and his estate was substituted. Defendant appealed, and
the Court of Appeals, T. M. Burns, P. J., and Quinn and
O'Hara, JJ., reversed (Docket No. 19005). Plaintiffs appeal.
*Held:*

1. The general rule is that to constitute actionable fraud it
must appear that: (1) the defendant made a material represen-
tation; (2) it was false; (3) when he made it he knew that it was
false, or made it recklessly, without any knowledge of its truth
and as a positive assertion; (4) he made it with the intention
that it should be acted upon by the plaintiff; (5) the plaintiff
acted in reliance upon it; and (6) he thereby suffered injury.

2. A reading of the testimony fairly suggests that the defend-
ant's agents gave Pinkerton the impression that he would have
an exclusive heavy-duty truck franchise as long as he did a
reasonable job in the area, but that Pinkerton understood that

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur 2d, Fraud and Deceit § 12.

[2] 37 Am Jur 2d, Fraud and Deceit § 445 *et seq.*

[3–5, 7] 37 Am Jur 2d, Fraud and Deceit §§ 57, 60 *et seq.*

Promises and statements as to future events as fraud. 125 ALR 879.

[5] 37 Am Jur 2d, Fraud and Deceit §§ 471, 472.

[6] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

he was not actually granted an exclusive franchise, rather that there would be no reason to award a franchise to anyone else in the area. Pinkerton's behavior after the franchise agreement was executed is inconsistent with the argument that he thought he had been awarded an exclusive franchise, because he frequently asked agents of the defendant for assurances that no one else would be awarded a franchise in the area. Plaintiffs have failed to establish the alleged fraud by clear and convincing evidence.

3. An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact; future promises are contractual and ordinarily do not constitute fraud. However, an action for fraudulent misrepresentation may be based upon a promise where the promise is made in bad faith without intention of performance. The evidence of fraudulent intent, to come within the exception, must relate to conduct of the actor at the very time of making the representation, or almost immediately thereafter. A letter from an attorney employed by the defendant, written three years after the alleged promise, which the trial court solely relied on in finding fraudulent misrepresentation is too remote in time to indicate that when the defendant's agents made the promise they had no intention of fulfilling it. The statements of the defendant's agents that it was their intention that only one franchise would be awarded in the area were consistent with the assurances that there would be no need to award another franchise if the plaintiff did a good job.

Affirmed.

Justice Williams concurred, but would hold that fraud may be predicated on broken future promises. In this case the circuit court erroneously relied on a letter allegedly evidencing that the defendant's agents had no intention to fulfill their promises which was admitted into evidence for other purposes. Absent this evidence, the defendant made no material misrepresentation to the plaintiff.

59 Mich App 366; 229 NW2d 456 (1975) affirmed.

Opɪɴɪoɴ of ᴛʜᴇ Couᴛ

1. Fᴀᴜᴅ—Eʟᴇᴍᴇɴᴛs of Acᴛɪoɴ.

The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it

should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury.

2. FRAUD—BURDEN OF PROOF.

The burden of proof rests with the plaintiff in an action for fraud; fraud will not be presumed but must be proven by clear, satisfactory and convincing evidence.

3. FRAUD—CONTRACTS—FUTURE PROMISES.

An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact; future promises are contractual and ordinarily do not constitute fraud.

4. FRAUD—FUTURE PROMISES—BAD FAITH.

An action for fraudulent misrepresentation, as an exception to the general rule, may be predicated upon a promise made in bad faith without intention of performance, but evidence of fraudulent intent, to come within the exception, must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter.

5. EVIDENCE—FRAUD—FUTURE PROMISES—BAD FAITH.

A letter from an attorney of a defendant to the plaintiff in an action for fraud written three years after an alleged promise was made by agents of the defendant is too remote in time to indicate that when the agents made the promise they had no intention of fulfilling it.

6. APPEAL AND ERROR—NONJURY CASES—SUPREME COURT REVIEW.

A broader scope of review is provided by court rule in a nonjury case than on review of a judgment entered upon verdict of a jury; in the former case the Supreme Court sifts the evidence to determine whether it clearly preponderates in favor of the appellant's cause (GCR 1963, 517.1).

CONCURRING OPINION

WILLIAMS, J.

7. FRAUD—FUTURE PROMISES—BAD FAITH.

*An action for fraudulent misrepresentation may be predicated on broken future promises.*

*Gillard, Bauer & Mazrum* for plaintiffs.

*Dickinson, Wright, McKean, Cudlip & Moon* (by

*John E. S. Scott* and *Kathleen Lewis)* for defendant.

LINDEMER, J. This case involves an action for damages. Plaintiffs allege that they were fraudulently induced into entering a franchise agreement with defendant by the representations of defendant's agents that plaintiff Hi-Way Motor Company would be the exclusive heavy-duty truck dealership in the Alpena area.

Hi-Way Motor Company is incorporated in this state for the express purposes of selling automobiles and trucks and maintaining a service department. William J. Pinkerton, Sr., was president of that company and prior to holding such office was an attorney and a corporation executive for many years. Plaintiffs' bill of particulars describes Pinkerton as having "extensive knowledge as a businessman and a lawyer" in the field of management.

Defendant International Harvester Company markets a variety of automotive products, machinery, and equipment through a nationwide system of dealerships. These products include a complete line of trucks. This truck line embraces so-called "light trucks" and "heavy-duty" trucks. The "Fleetstar A" is one type of "heavy-duty" truck. It is the granting of a franchise for this "Fleetstar A" series to another dealership that provoked the instant controversy.

Prior to May, 1967, and for a period of approximately two months, Pinkerton negotiated with Alden Peterson, Harold Wahl, and James Coey, employees of defendant, concerning the acquisition by plaintiff of an International Harvester truck franchise in the Alpena area. A franchise in Alpena was formerly held by Everett Smith, but

Mr. Smith had terminated his franchise in April of 1967. Plaintiffs claim that during these negotiations Peterson, Wahl, and Coey assured Pinkerton that no other heavy-duty truck line franchise would be granted in that area.

In the general geographic area around Alpena County there are three other dealers who were, prior to the time that plaintiff entered into its franchise agreement, authorized to sell certain International Harvester products. However, none of these dealers had franchises for "heavy-duty" trucks. These dealers are located in Spruce, Hillman, and Rogers City, Michigan.

On May 15, 1967, the franchise agreement was signed and Hi-Way Motor Company became an authorized International Harvester dealer. This agreement was supplemented by a series of additional written agreements authorizing the sale of different products, all incorporating the basic contract. As a result, plaintiff company was authorized to sell defendant's complete line of light-duty and heavy-duty trucks, including the aforementioned "Fleetstar A" line.

Clause 32 of the agreement provides as follows:

*"All understandings and agreements between the parties are contained in the agreement, which supersedes and terminates all previous agreements between the parties pertaining to the sale of the goods covered by this agreement.* The rights of either party pertaining to goods sold by the Company to the Dealer under the previous sales and service agreements will be determined by the provisions of this agreement. *There are no oral or collateral agreements or understandings affecting the agreement.* When authorized by the Company's General Office, the Company's District Manager or Assistant District Manager may enter into written agreements with this Dealer, which are not inconsistent

with any provision of the agreement, supplementing the agreement, but no representative of the Company, other than one of its corporate officers, is authorized in its behalf to modify, change or waive any of the provisions of the agreement or to change, add to (except by the filling in of blank lines and spaces) or erase any of the printed portion of the form upon which the agreement is prepared." (Emphasis supplied.)

Plaintiff opened for business in May of 1967. In December of that same year, plaintiff was granted a franchise by Oldsmobile and operated both dealerships on the same property. In November of 1968, defendant replaced its district manager and Mr. Wahl, its assistant district manager. In light of these changes, plaintiff again sought assurances concerning the exclusivity of his heavy-duty truck franchise.

In January of 1970, defendant informed Pinkerton through Mr. Peterson that a "Fleetstar A" franchise was to be awarded to a Mr. Thompson, a dealer in Spruce, Michigan. Pinkerton protested this decision, and a series of meetings resulted at which Pinkerton attempted to have defendant reconsider its decision. When Pinkerton did not get the satisfaction he sought, he notified the defendant that he was unilaterally terminating the franchise agreement. The parties agreed that October 31, 1970, was the termination date.

Plaintiff then instituted this action for damages claiming fraud and misrepresentation. The trial court, sitting without a jury, found for the plaintiffs in the amount of $71,211.68 and rendered judgment accordingly. The Court of Appeals reversed, reasoning that the evidence did not support a finding that all the elements of a cause of action for fraudulent misrepresentation existed. 59 Mich App 366; 229 NW2d 456 (1975). Plaintiffs'

application for leave to appeal was granted July 23, 1975. We affirm the Court of Appeals.

The elements constituting actionable fraud or misrepresentation are well-settled in this jurisdiction. In *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919), we set forth those elements:

"The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

See also, *A&A Asphalt Paving Co v Pontiac Speedway, Inc,* 363 Mich 634, 639; 110 NW2d 601 (1961); *Marshall v Ullmann,* 335 Mich 66, 73–74; 55 NW2d 731 (1952); *Waldbauer v Hoosier Casualty Co,* 285 Mich 405, 408–409; 280 NW 807 (1938). The burden of proof rests with plaintiffs. Fraud will not be presumed but must be proven by clear, satisfactory and convincing evidence. *Youngs v Tuttle Hill Corp,* 373 Mich 145, 147; 128 NW2d 472 (1964).

The initial consideration, then, is whether defendant's agents made a material representation to plaintiff. In *Boston Piano & Music Co v Pontiac Clothing Co,* 199 Mich 141; 165 NW 856 (1917), we affirmed the rule that an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud.

A reading of the testimony fairly suggests the conclusion that defendant's agents gave Pinkerton the impression that he would have an exclusive heavy-duty truck franchise "as long as he did a reasonable job" in the area.

Plaintiffs contend that the above promise amounted to the oral granting of an exclusive franchise agency. They urge that the assurances were representations as to existing fact, despite the "mere fact" that they were stated in promissory terms. The record, however, cannot reasonably bear such a construction.

Pinkerton, who conducted the negotiations, testified not that he was actually granted an exclusive franchise but rather that he was promised that "if we did * * * a reasonable job, there would be no reason or no excuse to give any part of the heavy-duty franchise to anyone else in [the] area". Pinkerton also testified that he read and understood the contract before he signed it.

Pinkerton's behavior after the contract was executed is inconsistent with the argument that he thought he had been awarded an exclusive franchise. The record shows that *after* the franchise was awarded, Pinkerton frequently asked Peterson for assurances that no one else would be awarded a heavy-duty contract in the Alpena area. Later, Pinkerton traveled to Detroit to get such assurances from defendant's district manager.

Plaintiffs further contend that even if the representations are found to be promises of future action, they nevertheless fall within the "bad faith" exception to the general rule that such promises are not actionable torts. Plaintiffs' contention is based on our holding in *Crowley v Langdon,* 127 Mich 51, 58–59; 86 NW 391 (1901), that a fraudulent misrepresentation may be based

upon a promise made in bad faith without intention of performance.

Plaintiffs point to the fact that it was against defendant's company policy to grant exclusive dealerships in arguing that defendant's agents never intended to perform when the promises were made. However, the record shows that each witness, in response to Pinkerton's concern regarding an exclusive franchise, indicated that it was his intention at the time that only one heavy-duty franchise would be awarded in the area. Both Peterson and Wahl testified that it was their opinion in 1967 that the market area would support only one full line dealer. This opinion is consistent with Pinkerton's testimony that defendant's agents assured him there would be no need to grant other franchises for heavy-duty trucks if he did a good job.

Plaintiff maintains that a letter from an attorney employed by defendant to plaintiffs' attorney is evidence of defendant's agents' bad faith. The letter, together with others, was admitted over defense counsel's objection for the limited purpose of establishing a chronology of events. The admission into evidence was on a separate record. Although it was never reoffered or readmitted, the trial court relied solely on this letter in finding that defendant's agents acted with no intention of fulfilling their promises.

The letter, dated some three years after the promises were made, denies any commitment to an exclusive franchise and states that even if such a commitment were made it could not be honored due to company policy. Yet as we stated in *Danto v Charles C Robbins, Inc,* 250 Mich 419, 425; 230 NW 188 (1930), evidence of fraudulent intent, to come within the exception, must relate to conduct

of the actor "at the very time of making the representations, or almost immediately thereafter". The letter is evidence too remote in time to indicate that when the agents made the promise they had no intention of fulfilling it.

Reliance is also placed on a related doctrine, the so-called "false token" exception to the general rule that broken promises of future action are not actionable torts. This exception pertains where, although no proof of the promisor's intent exists, the facts of the case compel the inference that the promise was but a device to perpetrate a fraud. As we have indicated, the record is bereft of any such facts. Moreover, the case relied on for this point, *Rutan v Straehly,* 289 Mich 341; 286 NW 639 (1939), involved a fiduciary relationship. Here, the record shows no such relationship, but rather the negotiations of two knowledgeable commercial parties.

Like the Court of Appeals, we are unable to find evidence from which it could reasonably be inferred either that defendant's agents gave their promises without intention of performance or that they misrepresented a past or present fact. Although we are hesitant to disturb the trial judge's findings, we find that they are within the "clearly erroneous" language of GCR 1963, 517.1. The "judicial sieve" employed here is appropriately "of finer mesh than the one correspondingly employed here on review" of a jury's verdict. *Schneider v Pomerville,* 348 Mich 49, 54–55; 81 NW2d 405 (1957). We conclude, therefore, that plaintiffs have failed to establish the alleged fraud on the part of defendant by clear and convincing evidence.

The Court of Appeals is affirmed. Costs to defendant.

KAVANAGH, C. J., and LEVIN, COLEMAN, FITZGERALD, and RYAN, JJ., concurred with LINDEMER, J.

WILLIAMS, J. *(concurring)*. I concur with my Brother Justice LINDEMER. I agree with the circuit court that fraud may be predicated on broken future promises. However, in this case the circuit court relied exclusively on a letter allegedly evidencing fraud which was admitted into evidence for purposes other than showing defendant's agents had no intention of fulfilling their promises. Absent this evidence, I agree that defendant in this case made no material misrepresentation to plaintiff.