**ARROWOOD INDEMNITY COMPANY, Plaintiff–Appellee,**

v.

**Michael Louis CRISTINI, Defendant–Appellant,**

U.S. Fire Insurance Company, Third–Party Defendant–Appellee,

Alice Ingles; City of Warren, MI; Patrick McQueeny, aka Personal Representative of the Estate of Donald Ingles, Defendants.

No. 15–1257.

United States Court of Appeals, Sixth Circuit.

Nov. 9, 2015.

BEFORE: ROGERS and DONALD, Circuit Judges; ROSE, District Judge.*

ROGERS, Circuit Judge.

Michael Cristini appeals the district court's dismissal of his fraud, silent fraud, civil conspiracy, and negligent misrepresentation claims against two insurers. In settling for $1.5 million, Cristini was allegedly misinformed that the City of Warren's available insurance was no more than $2.32 million. Because it was not reasonable for Cristini to rely on the insurers' misrepresentation in settling for the far lesser amount, the district court properly dismissed each claim.

In 1991, Michael Cristini and Jeffrey Moldowan were jointly convicted of kidnapping and rape. An eyewitness statement exculpating Cristini and Moldowan surfaced and resulted in retrials and acquittals for both individuals. This came after Cristini and Moldowan spent approximately 13 years in prison. Following their acquittals, Cristini and Moldowan filed separate complaints against the City of Warren and the estate of Detective Donald Ingles, alleging, among other claims, that Detective Ingles withheld exculpatory evidence and that the city engaged in malicious prosecution. Because of procedural issues, Moldowan's case progressed at a faster rate than Cristini's case.

In October 2011, the parties in the Moldowan case settled for approximately $2.8 million. The Warren defendants had insurance policies with Arrowood Indemnity Company and U.S. Fire Insurance Company, and of the $2.8 million settlement amount, Arrowood contributed $1.12 million, U.S. Fire contributed $1.43 million, and the city contributed $250,000. Although the Moldowan case was settled, the Cristini case continued. Cristini alleges, and we accept as true for the purposes of review, that on July 18, 2013, counsel for the Warren defendants informed Cristini that Arrowood was denying coverage for Cristini's suit, and that Arrowood refused to contribute to or participate in any settlement. Arrowood confirmed this position by filing a separate action for declaratory judgment, asking the district court to declare that Arrowood's policy with the Warren defendants did not cover Cristini's claims.

In the Cristini suit, the Warren defendants informed Cristini that Arrowood's refusal to involve itself in any potential settlement meant there was less insurance coverage available for Cristini's case than there was available for Moldowan's case. On November 7, 2013, Cristini's counsel memorialized in writing its understanding that "there is no longer the same amount of insurance coverage as there was in the Moldowan case." Shortly thereafter, Cristini made a settlement demand for $2.8

---

* The Honorable Thomas M. Rose, United States District Court for the Southern District of Ohio, sitting by designation.

million. This amount exceeded the insurance coverage that the Warren defendants said was available at that time, and in a status conference on November 12, 2013, the Warren defendants stated that they would refuse to consider any settlement demand from Cristini unless the demand was within their insurance policy limit. In response to a demand from Cristini to know the insurance policy limit, counsel for the Warren defendants stated that $2.32 million would exhaust its available coverage, and that all of its available coverage came from the policy with U.S. Fire.

In a subsequent status conference on December 3, 2013, counsel for the Warren defendants refused to entertain a settlement demand or a consent judgment that exceeded $2.32 million. At this status conference, counsel for the Warren defendants again stated that the maximum available insurance was $2.32 million because Arrowood would not participate in any settlement. Less than 10 days after this status conference, Cristini made a settlement demand of $2.32 million—the exact amount of the insurance policy limit as represented by the Warren defendants. That same day, counsel for the Warren defendants confirmed receipt of the demand and stated that it had "already communicated it to the necessary carrier and [the counsel's] clients."

The Warren defendants rejected the $2.32 million settlement demand and did not propose a counteroffer. Counsel for the Warren defendants sent the rejection via written message, stating:

I have just concluded a lengthy telephone conference with representatives of the City of Warren and U.S. Fire. As a result of that conference, I have been asked to restate to you our belief that the entire cause of action set forth on behalf of the plaintiff is barred by the applicable statute of limitations. Additionally, we believe that it will be extremely difficult for the plaintiff to meet his burden of proof on the two remaining claims, *Brady* and failure to train.

US Fire has also asked me to advise you that they are resolute in their willingness to proceed to trial. With that, I have been instructed to reject your most recent settlement demand of $2,320,000.00. I have been advised that there will be no counter-offer from defendants until the demand of plaintiff is much more reasonable.

Nowhere in this message is any reference to Arrowood. For the next two weeks, the parties engaged in further settlement discussions. Cristini and the Warren defendants reached a settlement shortly before their scheduled trial, and the parties stated on the record that they agreed to settle for $1.5 million.

Following the settlement, counsel for the Warren defendants circulated a draft release. The draft revealed that Arrowood would contribute $500,000 to the Cristini settlement; this news surprised Cristini, due to the previous representations regarding Arrowood's refusal to involve itself. Feeling tricked, Cristini filed an eight-count counterclaim and third-party claim against Arrowood and U.S. Fire on February 12, 2014.[1] The eight counts consisted of (1) fraud as to Arrowood; (2) fraud as to U.S. Fire; (3) civil conspiracy to commit fraud as to Arrowood and U.S. Fire; (4) silent fraud as to Arrowood; (5) silent fraud as to U.S. Fire; (6) civil conspiracy to commit silent fraud as to U.S. Fire and Arrowood; (7) negligent misrepresentation by Arrowood; and (8) negligent misrepresentation by U.S. Fire.

1. This was a "counterclaim and third-party claim" because Cristini filed it in the declaratory judgment action that Arrowood had previously filed.

Arrowood and the Warren defendants resolved their claims in the declaratory judgment suit. Thus, the only claims that remained were Cristini's claims against Arrowood and U.S. Fire. Arrowood and U.S. Fire each filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Cristini did not plausibly allege the elements of fraud. The insurers also argued that Cristini's fraud allegations did not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

The district court dismissed each of Cristini's claims based on the lack of reasonable reliance on the insurers' misrepresentation. The insurers argued that Cristini had the ability to determine for himself whether the Warren defendants were covered under the Arrowood insurance policy and that necessarily means that Cristini's reliance was not reasonable. The district court agreed with this argument but stated: "that is not the only way to read Cristini's pleadings." The district court proceeded to address what it considered a more forceful argument on Cristini's behalf: that Cristini relied not only on the provisions of the policy but on Arrowood's flat refusal to contribute to a settlement.

The district court found, however, that Cristini's reliance on the representation that Arrowood would not participate in or contribute to the final settlement of the case was not reasonable because there were other sources of funding from which Cristini could ultimately collect. While acknowledging that Cristini did indeed rely to his detriment on Arrowood's misrepresentation, the district court engaged in a further analysis and asked, "was it *reasonable* for Cristini to rely on Arrowood's false representation when making his decision to settle his case for $1.5 million?" The answer to this question, according to the district court, is "no." The court reached that conclusion by considering the facts that the Warren defendants were "readily collectable" and that the Arrowood insurance policy was not the only source from which Cristini would be able to collect a potential debt. Thus, as a result of Cristini's lacking reasonable reliance in his allegations, the district court dismissed his fraud, silent fraud, and negligent misrepresentation claims.

Based on its reasoning regarding the fraud and silent fraud claims, the district court also dismissed Cristini's civil conspiracy claims. According to the opinion, Cristini failed to plead a plausible civil conspiracy claim because the underlying tort pleadings failed the plausibility test. The court stated that without the viable intentional tort claims, the conspiracy claim must fail as well. Thus, the district court found that all of Cristini's claims failed due to a lack of reasonable reliance.[2]

In a timely motion for reconsideration, Cristini characterized the insurers' misrepresentation as pertaining to the Warren defendants' "maximum amount of insurance coverage available." This was a change from how Cristini characterized the misrepresentation in his counterclaims and third-party claim, and the district court noted this change in its order denying the motion for reconsideration, saying Cristini's new position was "considerably weaker." Thus, the court found no palpable defect in its original opinion and denied Cristini's motion for reconsideration. Cristini now appeals.

**2.** With regard to the silent fraud and negligent misrepresentation claims, the district court also considered whether the insurers had duties to disclose under Michigan law.

The district court further addressed the insurers' mitigation-of-damages, election-of-remedies, and Federal Rule of Civil Procedure 14(a)(1) arguments.

■ Cristini failed to allege plausibly that his reliance on the insurers' misrepresentation was reasonable. This is true whether, first, the alleged misrepresentation was that the amount of coverage was $2.32 million, or second, the alleged misrepresentation was that Arrowood would simply not contribute to a Cristini-settlement. As to the first, Cristini possessed copies of the Warren defendants' insurance policies with Arrowood by virtue of his being named a defendant in the declaratory judgment suit; the Arrowood policies were attached to the complaint. If someone has either "full knowledge to the contrary of [the] representation," *Montgomery Ward & Co. v. Williams*, 330 Mich. 275, 47 N.W.2d 607, 611 (1951), or "the means to determine that [the] representation is not true," *Nieves v. Bell Indus., Inc.* 204 Mich.App. 459, 517 N.W.2d 235, 238 (1994), then that individual cannot plausibly assert reasonable reliance on the representation. In the present case, Cristini could have compared the insurers' representations regarding the insurance coverage amount with the policy, and this capability to determine the falsity of the first misrepresentation keeps Cristini's claim from entering the realm of reasonable reliance.

The foregoing principle applies with particular force in the context of an insurer's misrepresentation: "when the insurer has made a statement that clearly conflicts with the terms of the insurance policy, an insured cannot argue that he or she reasonably relied on that statement without questioning it in light of the provisions of the policy." *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 751 N.W.2d 443, 451–52 (2008). If the insurers falsely represented that the Warren defendants had $2.32 million of insurance coverage, Cristini could have simply examined the policies to determine whether the representations were indeed false.

■ Cristini also failed to allege plausibly that he reasonably relied on the insurers' statements that Arrowood would not contribute. Cristini alleged that the insurers, through the Warren defendants' counsel, stated that Arrowood would neither participate in nor contribute to any potential settlement in the Cristini suit. As the district court noted in its opinion, this allegation does not depend on the insurance coverage under the written documents. Cristini argues that he settled his claims for $1.5 million because of the defendants' misrepresentation that Arrowood would not participate in the settlement. Even if Arrowood did not participate in the settlement, the Warren defendants had other assets—including tax receipts—they could use to pay off an amount higher than $1.5 million (or the $2.32 million U.S. Fire policy limit). *See* Mich. Comp. Laws § 600.6093(1).

In deciding to accept the $1.5 million settlement rather than go to trial, Cristini could not have reasonably thought that more than $1.5 million could be negotiated if Arrowood participated in the settlement. Arrowood would only have *added* to the $2.32 million coverage that Cristini already knew Warren had. In addition, as the district court reasoned, Cristini would also have known that the City of Warren could pay *even more* from its own funds, as it had in the Moldowan case. It is thus simply not plausible that Cristini could reasonably have relied upon the allegedly fraudulent statements indicating that Arrowood could not or would not contribute to a Cristini settlement.

This does not mean that a settlement for less than an insurance cap could never be based on reliance upon a false statement that the cap was lower than it actually was. If a defendant has few resources beyond its insurance, it may not be possible to get defense counsel to settle for the entire amount of the insurance coverage. Some-

thing like that was going on in *Kordis v. Auto Owners Ins. Co.,* 311 Mich. 247, 18 N.W.2d 811 (1945), a case that Cristini relies upon. *Kordis* involved a plaintiff who settled for $2,000 after being told that $2,000 was the limit of the defendant's insurance policy. *Id.* at 812. The plaintiff obviously had no way to know that the defendant had additional resources. The plaintiff was unrepresented and without anyone to evaluate professionally the defendant's settlement offer. *Id.* Further, the plaintiff was in the hospital and "still suffering from injuries received in the accident and was physically and mentally unfit to transact business" when the insurer's agent made the relevant misrepresentation. *Id.* In the present case, Cristini was represented by attorneys who were presumably physically and mentally fit to transact business with the Warren defendants and the insurers. *Kordis* is therefore inapposite.

*MacDonald v. Thomas M. Cooley Law School,* 724 F.3d 654 (6th Cir.2013) supports the conclusion that Cristini's reliance on the misrepresentation was not reasonable. In *MacDonald,* the Sixth Circuit held that it was unreasonable for students to rely on a school's published employment statistics when the school "expressly contradicted" those statistics in the same publication. *Id.* at 665. As stated previously, Cristini had the means to determine the truthfulness or accuracy of the insurers' statements: he had copies of the insurance policies and notice of the Warren defendants' assets. Thus, like the students in *MacDonald,* Cristini had ready access to information that contradicted the insurers' statements. Cristini argues that *MacDonald* and similar cases stand for the proposition that an express, contradictory statement from the defendant is necessary for reliance to not be reasonable, but these cases do not stand for such a sweeping requirement. For the foregoing reasons, *MacDonald* supports the district court's

conclusion that Cristini's reliance was not reasonable.

The lack of reasonable reliance disposes of each claim in this case. Under Michigan law, reliance is an essential element of the tort of fraud. *See Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813, 815–16 (1976). Furthermore, "under Michigan law, a court may determine, based on the complaint, that a plaintiff's reliance was unreasonable." *MacDonald,* 724 F.3d at 664 (citing *Novak v. Nationwide Mut. Ins. Co.,* 235 Mich.App. 675, 599 N.W.2d 546, 549 (1999)). Reasonable reliance upon the defendant's failure to disclose is also an essential element of a silent fraud claim in Michigan. *See Tocco v. Richman Greer Prof'l Ass'n,* 553 Fed. Appx. 473, 477 (6th Cir.2013). With regard to Cristini's civil conspiracy claims, the Michigan Court of Appeals has stated that "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Early Detection Ctr., PC v. New York Life Ins. Co.,* 157 Mich.App. 618, 403 N.W.2d 830, 836 (1986). Thus, because the fraud and silent fraud claims fail for want of reasonable reliance, the civil conspiracy claims also fail. Finally, justifiable and detrimental reliance is an essential element of negligent misrepresentation under Michigan law. *See Law Offices of Lawrence J. Stockler v. Rose,* 174 Mich.App. 14, 436 N.W.2d 70, 79 (1989). Because each of Cristini's claims requires reasonable reliance in order to be actionable, the district court properly dismissed each claim. We need not address the district court's alternative grounds for dismissing some of these claims.

The judgment of the district court is affirmed.