# STATE OF MICHIGAN

# COURT OF APPEALS

STERLING ORGANIZATION, LLC,

        Plaintiff/Counter-Defendant,

v

FORD BUILDING, INC.,

        Defendant/Counter-Plaintiff/Third-
        Party Plaintiff-Appellant,

and

CHARLES MADY and EXCLUSIVE REALTY,
LLC,

        Third-Party Defendants-Appellees.

UNPUBLISHED
July 17, 2018

No. 336256
Wayne Circuit Court
LC No. 15-011448-CB

Before: BORRELLO, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

        Third-party plaintiff Ford Building, Inc. (Ford) appeals by right the trial court's orders dismissing its third-party complaint against third-party defendants Charles Mady (Mady) and Exclusive Realty, LLC (Exclusive) (collectively, appellees), and requiring Ford to pay a broker's commission to Exclusive. We affirm.[1]

---

[1] Appellees' contend that this Court lacks jurisdiction over Ford's appeal because Ford failed to timely file its claim of appeal. We disagree. The trial court entered its final judgment on June 23, 2016. Ford filed a motion for relief from judgment on July 14, 2016, which the trial court denied on December 5, 2016. Ford filed its claim of appeal with this Court on December 21, 2016. Because Ford filed its claim of appeal within 21 days after the trial court entered its order denying the motion for relief from judgment, and because the motion for relief from judgment was itself filed within the 21-day period after entry of the final judgment, the claim of appeal was timely filed. MCR 7.204(A)(1)(b). The fact that the motion may have sought relief from an earlier order does not change its character as a timely-filed postjudgment

-1-

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from the sale of an office building in Detroit. Ford entered into an Agreement of Sale (Agreement) to sell the building to plaintiff Sterling Organization, LLC (Sterling). The Agreement also provided for Ford to pay Exclusive a specified commission at closing.[2] Sterling filed suit against Ford in August 2015, asserting that Ford had agreed to sell the property to Sterling with a closing date of August 18, 2015, but had "backed out and now says it will not sell the building to [Sterling] because of comments supposedly made by the real estate broker."

The Agreement set forth an inspection period during which Sterling had the option of inspecting the property, and, if providing notice of dissatisfaction, terminating the Agreement. A separate provision concerning notice states that

> [a]ll notices to a Party required or permitted hereunder may be given by overnight delivery, certified mail, return receipt requested, or by facsimile, email or hand delivered, . . . and will be deemed effective two days after mailing and/or upon verification that the overnight delivery, facsimile, email or hand delivery was received.

The provision further provides that "[a] copy of all notices sent to Seller shall be emailed" to three specified addresses.

Attached to Sterling's complaint was a copy of a fax from Ford to Sterling, dated as of the last day of the inspection period, which states, "This will confirm that you have repudiated the above agreement by your requirement of a $500,000.00 price reduction." Also attached was a copy of an e-mail from Sterling's representative to Ford, dated later the same day, advising Ford that "the purchaser will be proceeding to closing" on the contractual closing date. Sterling's complaint denied that it had repudiated or terminated the Agreement.

Sterling alleged that Ford had breached the Agreement and requested that the trial court enjoin Ford from selling the building to any other party and that it order specific performance of the Agreement. Ford filed a counterclaim alleging breach of contract, civil conspiracy, quiet title, claim and delivery, and declaratory relief.

Ford also filed a third-party complaint against appellees. Ford alleged that Mady had called Ford on the morning of the last day of the inspection period "and stated that [Sterling] was dissatisfied with the inspections, and . . . would consummate the sale only if [Ford] agreed to reduce the purchase price by $500,000.00 and delay the closing until September 1, 2015," that

---

motion under MCR 7.204(A)(1)(b), which operated to extend the period in which to file a claim of appeal.

[2] The Agreement identified Exclusive as the broker entitled to a commission. So did the trial court's order. Mady is Exclusive's chief executive officer.

Mady appeared personally at Ford's offices that afternoon "and demanded to know if [Sterling's] conditions had been accepted," that Ford informed appellees that Sterling "had repudiated the Agreement by its requirement of a price reduction and a delay of closing," and that Ford had "confirmed [Sterling's] repudiation by email" later that day. The third-party complaint also asserted that Sterling shortly thereafter "attempted to rescind its repudiation and reinstate the Agreement."

Ford additionally alleged that appellees had consistently acted as Sterling's agent, not Ford's agent, and had made fraudulent misrepresentations in that role; alternatively, Ford alleged that in the event the court were to determine that appellees were Ford's agent (rather than Sterling's), appellees had breached their fiduciary duties to Ford. Ford requested "compensatory and exemplary damages" against appellees, and also a declaration that Ford "has no obligation to pay a commission to [appellees] under the terms of the Agreement or otherwise." Appellees moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim). In response, Ford argued that it was not required to pay a commission to appellees under the "faithless servant doctrine."[3]

The trial court granted summary disposition in favor of Sterling on Ford's counterclaim. The trial court granted summary disposition in favor of appellees on Ford's third-party complaint. The trial court entered judgment in favor of Sterling for specific performance of the Agreement, stating in part that "[a]t closing [Ford] must pay [Exclusive] its commission as provided in . . . the Agreement of Sale." The trial court thereafter denied Ford's motion for partial relief from judgment regarding Ford's obligation to pay the commission. This appeal followed.[4]

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Id*. In reviewing a trial court's decision on a (C)(8) motion, this Court accepts as true all factual allegations in the complaint and reasonable inferences that may be drawn from them. *Id*.

---

[3] See Anno: *Application of "Faithless Servant Doctrine,"* 24 ALR 6th 399; *Sweeney & Moore, Inc v Chapman*, 295 Mich 360, 363; 294 NW 711 (1940) ("a broker may forfeit his right to compensation by misconduct, breach of duty, or wilful disregard, in a material respect, of an obligation imposed upon him by the law of agency").

[4] Ford does not challenge the judgment in favor of Sterling, or the dismissal of its counterclaim against Sterling; rather, its appeal is limited to the dismissal of its third-party complaint.

## III. ANALYSIS

Ford argues that the trial court erred by concluding that it had failed to plead a valid cause of action for misrepresentation or breach of fiduciary duty in its third-party complaint. We disagree. The trial court found that Ford had failed to allege any facts to show that it had detrimentally relied on statements made by Mady regarding Sterling's alleged request for a price reduction, and had failed to allege any damages arising from Mady's alleged misrepresentation. We agree with the trial court.

### A. AGENCY

As a threshold issue, we note that the trial court did not expressly decide whether appellees' role in the underlying real estate transaction was that of Sterling's agent, Ford's agent, or a dual agent. However, because the trial court is obliged when considering a motion filed under MCR 2.116(C)(8) to consider all factual allegations as true, *Smith*, 231 Mich App at 258, and because the trial court based its grant of summary disposition on Ford's lack of detrimental reliance and damages, it appears that the trial court accepted for purposes of the (C)(8) motion Ford's principal position that appellees were Sterling's agent, not Ford's.

Ford's position throughout the litigation was that appellees were acting as Sterling's agent, not Ford's. It only argued in the alternative, and only *if* the trial court found appellees to be Ford's agent, that appellees had breached their fiduciary duty to Ford and that the "faithless servant doctrine" relieved it of its obligation to pay a commission. Because the trial court did not make such a finding, it properly dismissed Ford's claims for breach of fiduciary duty.

### B. MISREPRESENTATION

The question therefore becomes whether the trial court correctly dismissed Ford's claim of fraudulent misrepresentation premised on appellees' actions as Sterling's agent.

> In Michigan, the elements of the common-law tort of intentional misrepresentation are: (1) the defendant made a material misrepresentation; (2) it was false; (3) when he made the representation, he knew that it was false; (4) he made the representation with the intention that the plaintiff should act on it; (5) the plaintiff did in fact act in reliance on it; and (6) the plaintiff thereby suffered injury or damage. [*Appalachian Railcar Servs, Inc v Boatright Enterprises, Inc*, 602 F Supp 2d 829, 880 (WD Mich, 2008), citing *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976).]

### 1. FALSE STATEMENT OF FACT

"[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact." *Hi-Way Motor Co*, 398 Mich at 336. "[A] fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance." *Id*. at 337-338. "[W]hen there is a legal or equitable duty of disclosure, '[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion

of a falsehood.' " *Titan Ins Co v Hyten*, 491 Mich 547, 557; 817 NW2d 562 (2012) (citation omitted).

Again, Ford's third-party complaint alleged that Mady had told Ford that Sterling was dissatisfied with the property and wanted a price reduction and a later closing date in order to go forward with the sale. Ford made no allegation that in doing so Mady had actually represented that he had the power to repudiate or otherwise terminate the agreement on behalf of Sterling, or that Sterling intended to repudiate or terminate the Agreement. In fact, in its third-party complaint, Ford pointed out that Mady had testified by affidavit that Sterling had never expressed a desire to terminate the Agreement, and that Mady lacked the authority to do so. Although Ford alleged that Mady had failed to disclose his lack of authority to terminate the Agreement if Ford did not agree to his request for modified terms, for an omission to constitute actionable misrepresentation, there must be "a legal or equitable duty of disclosure." *Titan Ins Co*, 491 Mich at 557. Ford cites no authority for the proposition that Mady was obliged during negotiations to disclose to Ford the limits of his authority to alter the deal. And as the trial court stated, "[t]he parties provided the court with no Michigan authority holding that an attempt to get a price reduction in a real estate transaction is misleading or deceitful."

## 2. RELIANCE

Further, the trial court found that Ford had failed to allege any facts supporting its claim that it detrimentally relied on Mady's statements that Sterling had requested a price reduction. The court noted that, based on Ford's third-party complaint, what occurred essentially was that Mady requested that the price be reduced, and that Ford declined to reduce the price and subsequently interpreted Mady's statements as indicating that Sterling had repudiated or terminated the Agreement. The trial court further noted that "despite alleging that it believed Mady's statement to constitute a termination of the agreement, there is no allegation of any action and/or omission taken in reliance on that alleged termination that caused any damages."

Ford argues on appeal because of Mady's statements it "understood the Agreement to have been terminated," and that it consequently sent an email to Sterling and Mady "confirming that the deal was terminated because of the requirement of a price reduction," to which neither Sterling nor Mady responded.[5] Thus, Ford argues, Mady's misrepresentations caused Ford to take the position that Sterling had terminated or repudiated the contract, and it suffered damages as a result. We disagree.

A party needing to prove reliance must show that it "took action or failed to take action, that he would not have otherwise, resulting in some detriment." *Greeley v Fairview Health Servs*, 479 F3d 612, 614-165 (CA 8, 2007). Ultimately, as the trial court noted, Ford suffered no

---

[5] Ford argues that Sterling's email stating that it would "be proceeding to closing," which it received shortly after its own communication characterizing Sterling as having repudiated the agreement, somehow did not address Ford's contention that Sterling had repudiated the contract when Ford refused to reduce the price.

detriment from being held to its agreement with Sterling; it sold the building at the price to which it had agreed, notwithstanding Mady's attempts to negotiate a price reduction.

Moreover, as the trial court additionally held, Ford "could not have relied on the statements as they were not made in writing as required by the agreement of sale." As noted earlier, the Agreement specified that "[a]ll notices to a Party required or permitted hereunder may be given by overnight delivery, certified mail, return receipt requested, or by facsimile, email or hand delivered." Further, all notices would be "deemed effective two days after mailing and/or upon verification that the overnight delivery, facsimile, email or hand delivery was received," and "[a] copy of all notices sent to Seller shall be emailed" to three specified addresses.

The trial court held that "assuming for purposes of this court's decision that [Mady] made the misrepresentation alleged by the Ford Building, it was not valid as it was not given in accordance with the terms of the Agreement of Sale." Ford argues that the Agreement specified "written" notice in only some situations, that it was not required by the contractual provisions relating to the expression of dissatisfaction with the inspection and the termination of the agreement, and that the trial court should have interpreted the use of "may" in the notice provision as indicating permissive, not mandatory, procedures. We disagree.

The notice provision refers to "[a]ll notices," not "all written notices," thus indicating that what follows applies to all notice situations. And, although the provision states that all notices to a party "may" be given by a variety of methods, and the word "may" is typically permissive, see *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008), it is clear from context that a party to the Agreement "may" choose from the Agreement's list of ways to provide notice, not substitute its own method not listed. See *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997) (discussing the maxim *expressio unius est exclusio alterius*). Assuming for the sake of argument, as the trial court did, that Mady's statements were meant to constitute notice of Sterling's intent to repudiate the contract, the oral statements could not be mailed, emailed or hand delivered to the addresses provided and thus could not be deemed effective. Further, Sterling sent written notice to Ford with copies to the relevant parties that same day confirming that it would pay the price specified in the Agreement and close at the specified time.

3. DAMAGES

Finally, Ford argues that the trial court erred by concluding that Ford had suffered no damages from Mady's alleged misrepresentations. Ford's third-party complaint requested "compensatory and exemplary damages," and asserted that appellees were liable in equity for any amounts for which Ford was determined to be liable to Sterling. But it neither offered specific damages amounts nor explained how Ford had suffered *any* damages. Sterling in fact prevailed on its complaint for specific performance, but the result was only that Ford was required to perform under the agreement that it had made. As the trial court observed, "there was no injury as Ford did not agree to the price reduction."

On appeal, Ford characterizes its alleged damages as expenses incurred in litigation, as well as the payment of Exclusive's commission. Ford additionally cites authority for the

-6-

proposition that a party is entitled to exemplary damages where that party has suffered from tortious conduct involving malice, insult, wanton disregard for his or her rights, or criminal indifference to civil obligations. See, e.g., *Oppenhuizen v Wennersten*, 2 Mich App 288, 296-297; 139 NW2d 765 (1966). We are not persuaded.

Ford agreed to pay a commission upon the close of sale. Ultimately the sale went through at the price the parties had agreed to; the trial court did not err by failing to characterize Ford's contractual obligation as damages. Further, attorney fees incurred in litigating a matter do not constitute "damages" unless a statute or court rule explicitly provides otherwise. See *Phinney v Perlmutter*, 222 Mich App 513, 560; 564 NW2d 532 (1997), impliedly overruled on other grounds by *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 290; 696 NW2d 646, amended 473 Mich 1205 (2005) (stating that "[a]wards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception."); see also *Cooley v Mid-Century Ins Co*, 52 Mich App 612, 617; 218 NW2d 103 (1974) (listing statutes and court rules that provide for fees and explaining that "[a]s a general rule, our courts have refused to allow recovery of attorneys' fees, either as an element of the costs of the suit or as an item of damages, unless allowance of a fee is expressly authorized by statute or court rule"). A party thus recovers litigation costs and attorney fees not by claiming them as damages, but by persuading the trial court that one of the recognized exceptions justifies an award of such costs and fees. Accordingly, the trial court correctly held that Ford had failed to set forth a valid claim for ordinary damages.

As for exemplary damages, we see nothing in Ford's allegations concerning Mady's attempts to secure a price reduction for his client that rises to the level of tortious or criminal conduct. See *Yamaha Motor Corp, U.S.A. v Tri-City Motors & Sports, Inc.*, 171 Mich App 260, 281; 429 NW2d 871 (1988). Therefore, the trial court correctly concluded that, taking Ford's factual assertions as true, it had failed to allege any damages suffered as a result of Mady's statements. *Smith*, 231 Mich App at 258.

For these reasons, the trial court correctly granted summary disposition in favor of appellees on Ford's third-party complaint, and correctly required Ford to pay Exclusive its contractually-specified commission. MCR 2.116(C)(8); *Smith*, 231 Mich App at 258.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

-7-