Alvin BLANCHARD; David Casarez;
Kevin Knobloch; and Allen
O'Bryant, Plaintiffs,

v.

SIMPSON PLAINWELL PAPER
COMPANY, Defendant.

No. 4:94:CV:28.

United States District Court,
W.D. Michigan.

Feb. 23, 1995.

Thomas M. Rizzo, Thomas M. Rizzo Law Offices, Grand Rapids, MI, for plaintiffs.

Robert C. Beck, James H. Geary, John W. Allen, Richard D. Fries, Howard & Howard, PC, Kalamazoo, MI, for defendant.

### OPINION

ENSLEN, Chief Judge.

The matters before the Court are defendant Simpson Plainwell Paper Company's (Simpson) motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56, and motion for sanctions, filed pursuant to Federal Rule of Civil Procedure 11.

### FACTS

Plaintiffs Alvin Blanchard, David Casarez, Kevin Knobloch, and Allen O'Bryant, are former employees of defendant Simpson. Plaintiffs were also members of the United Paper Workers International Union, AFL–CIO ("Union"). The Union is and was the sole bargaining agent for plaintiffs regarding conditions of employment, wages, and hours of employment, etc. A collective bargaining agreement between the Union and Simpson provides that the company retains the power to "direct" the workforce.[1] Simpson also bargained for the right to terminate an employee for insubordination [2] and drug related activities on company property, including arriving to work or working under the influence of drugs.[3] Furthermore, the agreement also provides that all grievances regarding Simpson conduct pursuant to the agreement shall be submitted to binding arbitration.[4]

In 1991 Simpson was informed by employees and the local police of drug activity among its employees on company premises. Simpson hired ASET Corporation to conduct a secret investigation of the possession, sale, distribution, and consumption of controlled substances on company premises. The secret investigation included under-cover investigators acting as employees. In April, 1992, Simpson and ASET retained two other investigators to interview employees identified by

---

1. Article XIV: "[T]he management of the facilities and the direction of the working force shall be the exclusive right of the employer."

2. Schedule B: "The following matters normally would result in progressive discipline to include warnings and/or suspension prior to termination. Discharge may occur on the first offense if the circumstances indicate a major flagrant violation....
 17. Insubordination."

3. Schedule B: "The following rules, if violated, may normally call for termination of an employee on the first occasion:
 3. Possession, sale or distribution of alcoholic beverages, or any controlled substance on Company premises...."

8. Consumption of, or being under the influence of alcoholic beverages or controlled substances on company property...."

4. Article IV; Section 5.6 Arbitration: "The jurisdiction of the arbitrator shall be limited to the interpretations of the provisions of this Agreement and compliance of the company with its obligations under this Agreement.... The decision of the arbitrator shall be final and binding.... This provision includes, but is not limited to, any settlement agreement made with any government agency to resolve allegations of alleged discrimination...."

the under-cover investigation as potential drug users. Plaintiffs were among those to be interviewed.

Over the course of a number of days, each employee to be interviewed was called away from his duties, introduced to the two investigators, told to cooperate with them, and taken to a private office that had all the windows papered-over. Inside the office, the employee was given the strong but erroneous impression that the company had independent evidence of his drug activity. The employee was then reminded that he could have Union representation as the investigators asked questions. Plaintiffs also allege that they were told a confession to illegal drug use would not lead to their discharge, but that leaving the office without assisting the investigators would mean termination. Simpson denies that any such promises, threats, or false representations were made.

Twelve employees were discharged based on self-incriminating information each provided in the interviews. Seven filed grievances and pursued them through binding arbitration. One settled before arbitration. Four of the discharges were upheld by the arbitrators who heard their claims; two were reinstated by a third arbitrator. Plaintiffs are the four former employees whose claims were denied.

Plaintiffs filed a five count complaint against Simpson in Allegan County Circuit Court in January, 1994. Simpson removed the case to this Court on February 22, 1994. Count I seeks to vacate the arbitration awards because the investigation violated plaintiffs' fundamental due process rights and because the decisions ignored the evidence. The remaining counts are state tort claims. Plaintiffs allege intentional infliction of emotional distress, false imprisonment, invasion of privacy, and fraud.

On September 2, 1994, Simpson filed this motion for summary judgment. On September 30, 1994, Simpson filed its motion for sanctions.

### Standard

In reviewing a motion for summary judgment pursuant to Rule 56, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), quoted in *Historic Preservation Guild v. Burnley*, 896 F.2d 985, 993 (6th Cir.1989). On the other hand, the opponent has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *genuine issue for trial.* " *Historic Preservation*, 896 F.2d at 993 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and consistently emphasized, recent Supreme Court decisions encourage the granting of summary judgments where there are no material facts in dispute. *Historic Preservation*, 896 F.2d at 993 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials,*

*Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555).

### DISCUSSION

Defendant Simpson seeks summary judgment on the grounds that the arbitration cannot be vacated by a court of law and that the state tort claims are preempted by principles of federal labor law. Plaintiffs believe that defendant has misconstrued the applicable federal law.

### I. Petition to Vacate the Arbitration

■ Plaintiffs claim that the decisions by the arbitrators should be vacated. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 gives federal district courts jurisdiction over suits for violation of labor contracts. Suits seeking to vacate an arbitration award fall within that statute. *Kallen v. Dist. 1199, Nat'l Union Hospital & Health Care Employees,* 574 F.2d 723, 725 (2d Cir. 1978). Simpson argues that under § 301, an arbitration award cannot be vacated by a federal court if the union has not been made a party and sued by the discharged employees for breach of the duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

■ Plaintiffs counter that their claims are not "fair representation" claims brought under § 301. Instead, they insist, the claims have been brought under the Arbitration Act, 9 U.S.C. § 10. It is true that the Arbitration Act governs the substance of a claim to vacate an arbitration award. However, 9 U.S.C. § 10 is not an independent source of federal jurisdiction for an employee seeking to vacate an arbitrator's decision. *See Katir v. Columbia University,* 821 F.Supp. 900, 901 (S.D.N.Y.1993), *aff'd,* 15 F.3d 23 (2d Cir.1994) (citations omitted). Section 10 of the Arbitration Act provides that a federal district court may vacate an arbitrator's decision "upon the application of a party to the arbitration." Under the collective bargaining agreement, the Union and Simpson are the parties to the agreement and any arbitration. Individual employees are not. *See* Collective Bargaining Agreement, p. 32, 33.

Because plaintiffs are individual employees who were not parties to the arbitration, they lack standing to challenge the arbitration decisions upholding their discharges. *See, e.g., Katir,* 821 F.Supp. at 901 (refusing to vacate, under 9 U.S.C. § 10, an arbitrator's "just cause" determination because the petitioner employee was not a party to the arbitration) (citations omitted). *See also, Acuff v. United Paperworkers, AFL–CIO,* 404 F.2d 169, 171, n. 2 (5th Cir.1968), *cert. denied,* 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (holding that employees whose grievances were denied lacked standing under 9 U.S.C. § 10 to vacate an arbitration award because the company and the union, not plaintiff employees, were the parties to the collective bargaining agreement and arbitration). *Cf. Local 13, Int'l Longshoremen's & Warehousemen's Union v. Pacific Maritime Ass'n,* 441 F.2d 1061, 1064 (9th Cir.1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972) (holding that 9 U.S.C. § 10 did not grant a local union, not a party to the collective bargaining agreement, standing to challenge an arbitration award in federal court).

■ The plaintiffs would have standing to petition this Court to vacate the arbitration awards in a "hybrid § 301 action." *See Del-Costello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983) (citations omitted). These are actions both against the employer for breach of the collective bargaining agreement and against the union for breach of the duty of fair representation. *See Id.* However, plaintiffs have failed to plead a breach of the duty of fair representation claim against the Union. Therefore, they lack standing to vacate the arbitration decisions in this or any other court of law.

■ In any case, plaintiffs fail on the merits. Plaintiffs rely on the argument that the arbitrators erred in determining that the National Labor Relations Board's refusal to issue a complaint in the matter was *res judicata* as far as plaintiffs' due process and fair investigation claims were concerned. An arbitrator's error in the interpretation or application of law will not be set aside if it is an honest decision reached after a full and fair

hearing. *See, e.g., Anaconda Co. v. District Lodge No. 27 of the Int'l Ass'n of Machinists And Aerospace Workers,* 693 F.2d 35, 37–38 (6th Cir.1982); *Coast Trading Co. v. Pacific Molasses Co.,* 681 F.2d 1195, 1198 (9th Cir. 1982). There is no indication or evidence presented that the decision was dishonest or that the hearings were incomplete or unfair.

Plaintiffs direct this Court's attention to a third arbitrator's decision that reinstated other employees on similar facts. That arbitrator's opinion, however, hinged on his finding that Simpson's conduct violated an "industrial due process" right implied in the "just cause" provision of the Simpson–Union contract. But the disagreement among the arbitrators about the meaning of the "just cause" provision as applied to the facts of similarly situated employees does not warrant vacating the awards. *See El Dorado Technical Services, Inc. v. Union General De Trabajadores de Puerto Rico,* 961 F.2d 317, 321 (1st Cir.1992) (holding that an arbitrator's refusal to follow a previous arbitrator's interpretation of a contract under similar circumstances does not expose either the ensuing award or the prior awards to judicial tinkering).

## II. State Tort Claims

The plaintiffs' claim that Simpson's investigation techniques resulted in false imprisonment and the invasion of their privacy, were fraudulent, and constituted the intentional infliction of emotional distress. In order to maintain these separate tort claims, plaintiffs must prove that their resolution does not require interpretation of the collective bargaining agreement. *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). Preemption occurs where claims are "substantially dependant on an analysis of a collective bargaining agreement." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). If the claim "turn[s] on any collective-bargaining agreement interpretation", it is preempted. *Lingle,* 486 U.S. at 406 n. 5, 108 S.Ct. at 1881 n. 5. The agreement must be read in context, for "[w]hether the words of the collective bar-

gaining agreement create any implied rights that might govern the alleged misconduct upon which" the claims are based is a question that may only be resolved "by references to 'uniform federal law.'" *Douglas v. American Information Technologies Corp.,* 877 F.2d 565, 573 (7th Cir.1989) (citing and quoting *Allis–Chalmers,* 471 U.S. at 211, 215, 105 S.Ct. at 1913). If an employer's conduct was authorized by the explicit or implicit terms of an agreement, there is § 301 preemption. *Id.*

However, "[E]ven if dispute resolution to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle,* 486 U.S. at 409–10, 108 S.Ct. at 1883–84. This Court must look to the elements of each tort and determine whether one or more of the elements turns on the bargaining agreement. *See, e.g., Id.*

### A. Invasion of Privacy

Plaintiffs contend that the investigation and interrogation by Simpson invaded their privacy. Invasion of privacy is the intrusion by a defendant using a means objectionable to the reasonable person into a matter which plaintiff has a right to keep private. *Hall v. Citizens Ins. Co. of America,* 141 Mich.App. 676, 685, 368 N.W.2d 250 (1985). This claim is preempted because whether drug activity at the workplace and arriving to work under the influence of drugs remained a matter plaintiffs had a right to keep private requires consideration of the Simpson–Union agreement prohibiting such activity. That is, resolution of the claim depends upon an interpretation of the employer's power to direct its workforce regarding illegal drug use at the workplace. *See Willis v. Reynolds Metals Co.,* 840 F.2d 254, 255 (4th Cir.1988) (holding invasion of privacy claim preempted because of employer's right under the labor agreement to investigate employee wrongdoing at the workplace). *See also, Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253, 256 (4th Cir.1987) (invasion of privacy regarding employer's search of em-

ployee and employee's automobile for drugs preempted by § 301).

Plaintiffs misunderstand *Neal v. Corning Glass Works Corp.,* 745 F.Supp. 1294 (S.D.Ohio 1989). In that case, the district court found not preempted an invasion of privacy claim based on the employer's violation of the doctor-patient privilege regarding confidential medical communications. The case herein regards discharges based on the observation and questioning of the employee at the work-place, not confidential communications.

**B. False Imprisonment**

 Plaintiffs' false imprisonment claims are based on the allegation that they were told that if they failed to fully cooperate with the investigators, they would be fired. False imprisonment is the "unlawful" restraint of an individual's personal liberty. *Stowers v. Wolodzko,* 386 Mich. 119, 134, 191 N.W.2d 355 (1971). This claim too is preempted. The right to direct the workforce includes the right of the employer to confront an employee with allegations of misconduct. *See Willis,* 840 F.2d at 255. Whether Simpson could hold an employee against his will by threatening to discharge him for refusing to listen to the employer or to answer questions during worktime regarding violations of a work-place safety rule requires consideration of Simpson's rights under the contract to direct the workforce, ensure the safety of the workers, and discharge an accused individual for insubordination and/or for engaging in prohibited drug activity at work. *See, Cook Paint and Varnish Co. v. NLRB,* 648 F.2d 712 (D.C.Cir. 1981) (holding that an employer may threaten an employee with discipline in seeking to compel compliance with investigatory questions regarding employee misconduct if the employer's inquiry is still in the investigatory stages). *See also, Strachan v. Union Oil Co.,* 768 F.2d 703, 705–06 (5th Cir.1985) (finding employee's claim of false arrest bordered on the frivolous). *See also, Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 856–57 (D.Md. 1981) (holding false imprisonment claim based on employer's investigation of wrongdoing preempted).

Plaintiffs have no recourse with regard to the § 301–preempted invasion of privacy and false imprisonment claims. To the extent that the plaintiffs raised the claims in their discharge proceedings, this Court is powerless to redress them because there is no allegation of a breach of the duty of fair representation against the union, a necessary party. *See DelCostello,* 462 U.S. at 163–65, 103 S.Ct. at 2289–91. Nor have plaintiffs shown the necessary prerequisites for this Court to tinker with an arbitrator's findings. *See Anaconda Co.,* 693 F.2d at 37–38. *See also, El Dorado Technical Services, Inc.,* 961 F.2d at 321; *Vacca v. Viacom Broadcasting of Missouri, Inc.,* 875 F.2d 1337 (8th Cir. 1989) (applying collateral estoppel principles to arbitrator's findings on the contract). Furthermore, to the extent that the plaintiffs failed to raise these two claims before the arbitrators, this Court cannot review them under the applicable federal principles because the plaintiffs failed to exhaust the exclusive grievance and arbitration procedure established by the collective bargaining agreement. *Clayton v. Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am.,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

**C. Fraud**

 Plaintiffs base their fraud claim on the allegation that they were promised that if they confessed to illegal drug activity, they would not lose their jobs. The elements of common law fraud are: 1) a material misrepresentation; 2) that was false; 3) that the perpetrator knew was false when he made it; 4) that was made with the intent that it should be acted upon; 5) that the plaintiff acted in reliance upon it; and 6) which resulted in injury to the plaintiff. *Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976) (citations omitted). Simpson makes no effort in its papers indicating which element might require an interpretation of its agreement with the Union. None of these elements requires consideration of the Simpson–Union agreement because the allegation regards individual promises made wholly apart from the collective bargaining agreement.

There is a carrot and stick distinction between the false imprisonment and fraud claims. The threat of discharge for failure to cooperate in an investigation (allegedly constituting false imprisonment) requires an interpretation of the employer's power to direct the employees, i.e., the power to discharge them for violating workplace rules and/or for refusing to listen to the employer or to assist the employer in maintaining a safe workplace. In contrast, the *promise* that employment will be retained even if cooperation leads to a basis for discharge does not derive from or depend upon any condition in the Simpson–Union agreement. A promise to individual workers of continued employment does not turn on the collective bargaining agreement and is not preempted by § 301. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 396, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987); *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 25 (2d Cir.1988); *Giles v. General Motors Corp.,* 825 F.Supp. 638, 640 (S.D.N.Y.1993).

Simpson insists that the arbitrators rejected arguments by the plaintiffs that their confessions were coerced through false promises. This is not a preemption argument; rather, it is something of a collateral estoppel argument that neither party has properly briefed.

### D. Intentional Infliction of Emotional Distress

Under Michigan law, a claim of intentional infliction of emotional distress requires the aggrieved party to prove that the defendant, through "extreme and outrageous" conduct, intentionally or recklessly caused severe emotional distress. *Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 602, 374 N.W.2d 905 (1985). Defendant cites several cases that hold intentional infliction of emotional distress torts preempted because determining whether an employer's conduct was extreme and outrageous would require consideration of what the bargaining agreement permits. More specifically, courts have found that the right to investigate and confront an employee who has been accused of wrong-doing preempts a state tort claim of intentional infliction of emotional distress

based on that conduct by an employer. *See, e.g., Willis,* 840 F.2d at 255; *Morris v. Ambassador Nursing Home, Inc.,* 845 F.Supp. 1164, 1168 (E.D.Mich.1994).

It does not appear to this Court that those cases should be read to indicate that a court cannot examine the conduct of the employer pursuant to an investigation for whether other torts were perpetrated that are not otherwise preempted by the bargaining agreement. *See Adams v. Shulton, Inc., U.S.A. Div.,* 747 F.Supp. 1258, 1260 (W.D.Tenn. 1990) (alleged defamation by employer in the course of an investigation not preempted because it did not require interpretation of any provision of the employer-union agreement). *See also, Miller v. AT & T Network Systems,* 850 F.2d 543, 550 n. 5 (9th Cir.1988) ("[I]f the particular CBA does not govern the offending behavior, ... then an emotional distress claim is not preempted.").

Simpson has not established that the fraud claim could not be decided without reference to the terms of the bargaining agreement or unwritten company and union practices. Plaintiffs may have a claim of intentional infliction of emotional distress based on their allegations that Simpson made knowing false promises to the individual employees. *See, e.g., Tellez v. Pacific Gas and Elec. Co., Inc.,* 817 F.2d 536, 539 (9th Cir.), *cert. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987) (alleged intentional infliction of emotional distress claim not preempted because it was based on a defamation claim that was not preempted). This Court need not, and should not, decide at this stage whether such a claim is merely duplicative of the tort of fraud or otherwise not actionable. *See, id.*

### III. REMAND OF PENDENT CLAIMS

In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court held that pendent jurisdiction is a doctrine of discretion.

> [The] justification [for pendent jurisdiction] lies in considerations of judicial economy, convenience and fairness to litigants.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the

parties, by procuring for them a surer-footed reading of applicable law. Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.*

█ Having ruled that summary judgment should be granted with regard to the claim for vacating the arbitral awards, and having determined that the state tort claims of fraud and intentional infliction of emotional distress are not preempted by § 301, this Court no longer has federal question jurisdiction. Section 301 simply does not confer jurisdiction over claims that do not involve interpreting the collective bargaining agreement. Nor does this Court have diversity jurisdiction. The proper result is for this Court to remand the state claims to state court. *See In re Romulus Community Schools,* 729 F.2d 431, 437 (6th Cir.1984). *See also, Morris,* 845 F.Supp. at 1169.

Indeed, there are somewhat open questions of state law for which state courts are the better forum: the alleged promise of continued employment may be a future promise that does not constitute fraud, *see Hi–Way Motor Co.,* 398 Mich. at 338–39, 247 N.W.2d 813 ("[E]vidence of fraudulent intent [regarding a promise of future action] must relate to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter'.") (citation omitted); on the other hand, the allegation may fall within the "false token" exception to the rule that broken promises of future action are not torts, *see id.* at 339, 247 N.W.2d 813; or, the fraud claim may lack merit on a basis not properly brought to the attention of this Court. Furthermore, a state court is the better forum for the issue of whether the emotional distress claim is duplicative or otherwise not actionable.

## IV. MOTION FOR SANCTIONS

█ Defendant Simpson filed a separate motion for sanctions, pursuant to Federal Rule of Civil Procedure 11(c). Rule 11 provides in relevant part that an attorney's or party's signature on a pleading "constitutes a certificate ... that the signer has read the pleading ...; that to the best of [her] knowledge ... formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose." Fed. R.Civ.P. 11. If one signs a pleading in violation of this rule, the Court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction." *Id.* The test of reasonableness in a Rule 11 determination is an objective standard as to whether the attorney's inquiry was reasonable under the circumstances. *Century Prods. Inc. v. Sutter,* 837 F.2d 247, 253 (6th Cir.1988).

Relying on materials submitted in its summary judgment motion, Simpson maintains that plaintiffs' attorneys have presented a pleading in which the legal contentions are not warranted by the existing law and the factual contentions lack evidentiary support. This Court found plaintiffs' claims for vacating the arbitration awards to lack merit; however, some of the issues behind that reasoning have not yet been addressed by the Sixth Circuit. Moreover, while there may be arguments for disposing of plaintiffs' state tort claims, not all of the tort claims are preempted by § 301—the argument of law presented by Simpson in this motion. Nor can this Court find that sanctions should be imposed for lack of proper investigation into the factual merits of the claims. As far as the Court can discern, plaintiffs maintained the same version of events in their grievance proceedings as in court. The other statements that defendant relies upon for its sanctions argument are the interview admissions that plaintiffs contend were coerced. Accordingly, there is insufficient basis for Rule 11 sanctions.

## CONCLUSION

On this summary judgment motion, this Court can only properly dispose of three of plaintiffs' five claims. Plaintiffs' claims for vacating the arbitration award lack merit because plaintiffs neither alleged an appropriate basis for vacating the award nor included an allegation against their union, a

necessary party. Two of the four state tort claims are preempted by federal law and warrant summary judgment. Proving invasion of privacy and false imprisonment require consideration of terms in the collective bargaining agreement. Summary judgment is proper on these two claims because plaintiffs have failed to follow the proper procedure in alleging, supporting, or otherwise bringing these § 301–preempted claims to federal court.

However, no apparent term in the collective bargaining agreement need be consulted to prove plaintiffs' fraud claim. Because the fraud claim survives § 301 preemption, it is not proper for this Court to dismiss the emotional distress claim. Should Simpson find a preempting term in its contract with the Union or some unwritten company-union practice that it has not brought to the attention of this Court, Simpson may bring it to the attention of the state court. So also may Simpson properly prepare for the state court any other grounds for dismissing the fraud and emotional distress claims.

Finally, the information provided this Court is not sufficient for the imposition of Rule 11 sanctions.