Scott McCREERY and Dale Egner, Plaintiffs,

v.

SEACOR, James Young and Walt Oleski, jointly and severally, Defendants.

No. 1:94–CV–529.

United States District Court, W.D. Michigan, Southern Division.

Feb. 15, 1996.

Scott E. Combs, Novi, MI, for Scott McCreery, Dale Egner.

Joseph J. Vogan, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Seacor, James Young, Walt Oleski.

## OPINION

QUIST, District Judge.

Plaintiffs, Scott McCreery and Dale Egner, were terminated from their employment with defendant Seacor in March of 1994. Following their termination, they filed this lawsuit alleging fraud, promissory estoppel, conspiracy to defraud and breach of contract. This matter is before the Court on defendants' motion for summary judgment. On January 16, 1996, this Court heard oral arguments on the pending motion and, upon request of plaintiffs, dismissed Counts II, III, and IV of their complaint. Thus, only the fraud claim alleged in Count I remains. The parties were granted additional time to supplement the record and file briefs. The Court has reviewed these additional submissions.

### Facts

Defendant, Seacor, is an environmental consulting firm with offices in several states, including one in Lansing, Michigan. Defendant, James Young, is the President of Seacor. Defendant, Walt Oleski, is Seacor's Vice President of Sales and Marketing.

Plaintiffs began working for Seacor in February of 1994. Prior to that time, they had been employed by another environmental consulting company, ESE. During pre-employment discussions, plaintiffs talked with Seacor about the possibility of bringing their existing clients to Seacor. The parties disagree about the nature of these discussions. According to defendants, the plaintiffs represented that their primary client, Amoco, would probably come with them if they were to leave ESE. Plaintiffs deny this assertion and counter that they were being hired for their "technical expertise" and not simply for their client base. Plaintiffs assert that prior to accepting employment with Seacor, they specifically asked defendants if they were being hired on account of their clients. Plaintiffs assert they were unequivocally told by defendants they were not being hired because of Amoco. Seacor allegedly wanted to hire them for their expertise. Plaintiffs contend that defendants' representation to them prior to their employment was a "flat-out" lie. Plaintiffs cite to the supplemental deposition transcript of defendant James Young. Mr. Young testified that the principal reason plaintiffs were hired was their Amoco business.

According to plaintiffs, defendants also made representations of material fact by stating that the Lansing office had been adequately funded.

The record contains a letter addressed to Mr. Egner dated January 12, 1994, which states in part:

> I am pleased to offer you the position of Principal Hydrogeologist with SEACOR in our Lansing, Michigan office.
>
> *     *     *     *     *     *
>
> The employment opportunity which we offer is of indefinite duration and will continue as long as both you and SEACOR consider it of mutual benefit. Either you or SEACOR is free to terminate the employment relationship at will and at any time.

A similar letter dated January 19, 1994, was sent to Mr. McCreery. It states:

> I am pleased to offer you the position of Sr. Hydrogeologist with SEACOR in our Lansing, Michigan office.
>
> *     *     *     *     *     *
>
> For personal and professional reasons, you may wish to relocate. If you request,

SEACOR will transfer you to one of our other offices.

\*     \*     \*     \*     \*     \*

The employment opportunity which we offer is of indefinite duration and will continue as long as both you and SEACOR consider it of mutual benefit. Either you or SEACOR is free to terminate the employment relationship at will and at any time.

Plaintiffs accepted Seacor's offer of employment and began working for Seacor on or about January 31, 1994. Plaintiffs claim that when they initially reported to work they had no office or equipment. They spent the first two or three weeks securing office space, furniture, and necessary office machinery. Plaintiffs claim that Seacor's representations regarding sufficient funding for the Lansing office were untrue.

Plaintiffs allege that almost every day either Mr. Oleski or Mr. Young would call to ascertain the status of the Amoco work. On February 17, 1994, Mr. Egner told Mr. Young that he had recently been informed by Amoco representatives that Amoco did not want to set a precedent such that when consultants changed jobs, their projects would immediately follow the consultants to their new employers. A few days later, on February 25, 1994, Mr. Oleski met with plaintiffs and informed them they were "laid off" effective that day. Mr. McCreery asked to be relocated, but he was never offered a position in another location.

### Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party.

*Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511.

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

"[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Plaintiffs have the burden of proving fraud by clear and convincing evidence. *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 159, 534 N.W.2d 502 (1995). Thus, this Court's inquiry is whether a jury applying the "clear and convincing" standard could reasonably find for plaintiffs. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2514.

*Discussion*

■ The six elements of a fraud claim are:

1) a material representation;

2) that was false;

3) that defendant made knowing it to be false or that it made recklessly without any knowledge of its truth and as a positive assertion;

4) with the intent that it should be acted upon by the plaintiff;

5) plaintiff acted with reliance upon it; and

6) resulted in the plaintiff's injury.

*Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976); *Brownell v. Garber*, 199 Mich.App. 519, 533, 503 N.W.2d 81 (1993). "[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact. Future promises are contractual and do not constitute fraud." *Hi–Way Motor*, 398 Mich. at 336, 247 N.W.2d 813.

■ Plaintiffs contend that defendants either knew their representations were false or made these representations recklessly without knowing whether they were true. Plaintiffs explain they did not accept employment with Seacor until after they had been reassured by defendants that the Lansing office was adequately funded and that plaintiffs were being hired because of their knowledge, rather than simply because of their clients, particularly Amoco. Plaintiffs allege their reliance upon the defendants' misrepresentations injured them.

Plaintiffs rely upon *Clement–Rowe v. Michigan Health Care Corp.*, 212 Mich.App. 503, 538 N.W.2d 20 (1995), in support of their claim. In *Clement–Rowe*, plaintiff's employment was terminated a month after she was hired. Plaintiff sued alleging that her employer had misrepresented its financial condition when hiring her. · Although she acknowledged signing an employment contract containing an at-will employment clause, plaintiff argued that defendant's personnel officer had modified the employment agreement with oral representations about the company's financial condition. *Id.* at 505,

538 N.W.2d 20. The Michigan Court of Appeals affirmed the trial court's decision to grant summary disposition on the wrongful discharge claim. *Id.* at 509, 538 N.W.2d 20. The court explained that because plaintiff signed an application form containing "at will" language, she could not establish a subjective or objective belief that she had any degree of job security. *Id.* at 506, 538 N.W.2d 20. However, the Michigan Court of Appeals reversed the trial court's decision to dismiss plaintiff's claim of misrepresentation. The Michigan Court of Appeals stated:

> [A]n employer who succeeds in asserting its economic health to attract qualified employees knowing the assertions are untrue may not later hide behind an at-will employment contract. Neither may it be permitted to avoid liability after omitting to disclose, when asked, known economic instability which later leads to economically-based layoffs.

*Id.* at 508–09, 538 N.W.2d 20.

Defendants claim the alleged fraud in *Clement–Rowe* was different because there were no alleged misrepresentations about the conditions under which plaintiff's employment would be continued. Rather, the employer misrepresented its *own* economic health and whether money for plaintiff's position had been allocated. Defendants argue that the alleged misrepresentations in this case have to do with the terms and conditions of plaintiffs' employment. "Plaintiffs claim that the Company misrepresented the *conditions* upon which their employment would be *continued*—i.e., that they would not be required to bring the AMOCO account with them as a condition for continued employment." (Defendants' reply brief at p. 3.) According to defendants, to the extent that *Clement–Rowe* supports plaintiffs' claim, it is an aberrational decision and need not be followed by this Court.

In *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 517 N.W.2d 235 (1994), the plaintiff was told that the "at-will" language in an employment application and subsequent compensation agreement did not apply to him. The Michigan Court of Appeals held that the trial court erred in refusing to dismiss plain-

tiff's misrepresentation claim. The Michigan Court of Appeals held that fraud requires reasonable reliance and there could "be no fraud where a person has the means to determine that a representation is not true." *Id.* at 464, 517 N.W.2d 235. In *Nieves,* the court held that the plaintiff knew that the representations were not true because he had read the various documents presented to him. "[A] plaintiff cannot claim to have been defrauded where he had information available to him that he chose to ignore." *Id.* at 465, 517 N.W.2d 235.

This Court concludes that the defendants' motion for summary judgment should be granted. In *Clement–Rowe,* the employer made a misrepresentation about an *existing fact extraneous to the employment contract,* its existing financial health. The misrepresentation in *Clement–Rowe* went to the very nature of the employer itself, as distinguished from the employer's expectation of a prospective employee or the employer's intentions regarding a particular employee. Furthermore, the misrepresentation of the extraneous matter in *Clement–Rowe* was not contradicted by the written employment agreement into which the parties entered. In the case at bar, the alleged misrepresentations do not concern the essential viability of defendants nor any other existing fact extraneous to the contract of employment. Rather, the alleged misrepresentations go to the defendants' expectations concerning plaintiffs' performance or defendants' intentions regarding plaintiffs' employment, either of which would only be realized in the future. In other words, the alleged misrepresentations are *intrinsic* to the terms and conditions of plaintiffs' employment agreement, and the alleged misrepresentations are directly contradicted by the written letters of employment.[1]

Plaintiffs might argue that defendants' representations of future inaction (not to terminate plaintiffs) or action (to fund the Lansing office) were fraudulent when made be-cause at the time defendants made these representations, defendants had no intention of abiding by them. One problem with this argument is that, as in *Nieves,* and unlike in *Clement–Rowe,* the plaintiffs in the instant case had clear, written language regarding the terms and conditions of their employment directly contradicting the very representations upon which plaintiffs claim they relied. The plaintiffs' letters of engagement said that their employment could be terminated "at will and at any time." This fact contradicts the plaintiffs' claim that they would not be terminated if they did not deliver their former employer's customers. Plaintiffs chose to ignore the express language of the letters. In the face of this language, it cannot be said that plaintiffs "reasonably relied" upon representations contrary to this written language.

This Court does not believe that the *Clement–Rowe* court intended to enable plaintiffs to avoid clear, written language in an employment agreement by alleging that the employer did not really mean "at will and at any time" when that language was included in the written agreement. Employers and employees should be bound by the written terms of their legal agreements. Furthermore, an expansive interpretation of *Clement–Rowe,* as advocated by the plaintiffs before this Court, is contrary to Michigan's "strong presumption" that an employment contract of indefinite duration is terminable at will for any reason or no reason at all. *Nieves,* 204 Mich. App. at 462, 517 N.W.2d 235. This Court believes that *Clement–Rowe,* to the extent it represents what the Michigan Supreme Court would hold, is limited to its facts— situations where the employer fraudulently misrepresents a material fact extraneous to the written contract of employment, such as its own economic viability. In short, the instant case is distinguishable from *Clement–Rowe* because the alleged misrepresentations in the instant case do not go to the extraneous fact of the employer's current economic

---

1. Thus, the plaintiffs' real claim more closely resembles a claim for breach of contract than a claim for fraudulent misrepresentation; i.e., the defendants broke their promise not to terminate plaintiffs if plaintiffs failed to obtain the Amoco business, and the defendants broke their promise to adequately fund the Lansing office. *See Hi–Way Motor,* 398 Mich. at 336, 247 N.W.2d 813. The alleged fraud in this case is "interwoven with the breach of contract." *See Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.,* 209 Mich.App. 365, 373, 532 N.W.2d 541 (1995).

viability. Rather, the misrepresentations in the instant case go to future expectations or intentions regarding the nature of plaintiffs' employment which are interwoven with, and directly contrary to, plaintiffs' written letters of employment.

Finally, and in addition, this Court does not believe that any reasonable jury could find by clear and convincing evidence that defendants' alleged misrepresentations regarding adequate funding of the Lansing office constituted fraud.

Accordingly, defendants' motion for summary judgment will be granted.