**VAN KAMPEN MERRITT, INC., Plaintiff,**

v.

**AVONDALE PROPERTIES PARTNERSHIP, Bernard Grizaffi, Robert D. Boyle, Morgan F. Murphy and Jay L. Statland, Defendants.**

**No. 87 C 10589.**

United States District Court, N.D. Illinois, E.D.

Jan. 11, 1989.

Frederick V. Lochbihler, Richard A. Wohlleber, Jeremy A. Gibson, Chapman and Cutler, Chicago, Ill., for plaintiff.

Stephen J. Spitz, Jerry M. Santangelo, Sperling, Slater & Spitz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Avondale Properties Partnership ("Avondale") in order to finance a proposed construction and rehabilitation of an office center in Chicago, Illinois sought assistance from the Illinois Development Finance Authority ("IDFA"), a statutorily created public body to make funds available for the construction of facilities in areas of high unemployment through the sale of bonds. Ill.Rev.Stat., ch. 48, ¶ 850.01 *et seq.* In order to accomplish its goals the IDFA was authorized to issue bonds secured solely by revenues the IDFA received from the borrower.

In 1986 the IDFA issued six million dollars of industrial development bonds, the proceeds of which it had agreed to lend to Avondale under a project financing agreement (ex. 2, cmplt.). Under this same agreement plaintiff, Van Kampen Merritt, Inc. ("Van Kampen") agreed to purchase the bonds which it intended to resell to the public pursuant to a private placement memorandum. The deal was closed on December 15, 1986 at which time the IDFA issued six million dollars of industrial development bonds, Van Kampen purchased the same at par, and Avondale received the proceeds (less a three percent underwriting fee which went to Van Kampen.)

According to the complaint Van Kampen's efforts to market the bonds were frustrated because it was required to disclose to prospective purchasers that one of the partners of Avondale, Bernard Grizaffi ("Grizaffi"), had been previously convicted of a felony, a fact unknown to Van Kampen at the time it purchased the bonds.

As a result of the foregoing Van Kampen filed this suit under the Securities and Exchange Act of 1934 ("1934 Act"), 15

U.S.C. § 78a *et seq.*, and the Illinois Securities Laws of 1953, Ill.Rev.Stat., ch. 121½, ¶ 137.1 *et seq.* Defendants have moved to dismiss on two grounds: first, under Rules 12(b)(6) and 12(b)(1), Fed.R.Civ.P., because the transaction did not involve securities as the same are defined in the 1934 Act thus defeating federal jurisdiction, and second, for failure to plead the claimed securities fraud with the particularity as required by Rule 9(b), Fed.R.Civ.P. For the reasons herein stated, defendants' motions are denied.

## DISCUSSION

### A. Securities Law Claim

Defendants argue that the transaction between Van Kampen and Avondale principally involved a mortgage loan and the purchase by Van Kampen of industrial revenue bonds. It argues that since under the allegations of the complaint no sales of the bonds were made to investors the transaction is purely mercantile in nature and under the "commercial/investment" test developed in *Hunssinger v. Rockford Business Credits, Inc.*, 745 F.2d 484, 488 (7th Cir.1984), such transactions are excluded from protection of the securities laws. In essence their argument is that when the complexities of this transaction are stripped away what is left is a run of the mill mortgage loan situation whereby a construction project of the borrower (Avondale) is financed by money loaned by the lender (Van Kampen).

In return plaintiff argues that this is "not a run of the mill" commercial transaction but is a purchase and sale of securities as the same is defined in the act and it is therefore protected by the 1934 Act.

■ The federal securities laws were enacted for the purpose of restoring investors' confidence in financial markets and eliminating the *caveat emptor* rule. The act defines "security" as "any note, stock, treasury certificate, *bond*, debenture ..." (emphasis supplied) but is prefaced by the phrase "unless the context otherwise requires." 15 U.S.C. § 77b. The Seventh Circuit, as well as other Circuits, have re-

lied upon the prefatory phrase "unless the context otherwise requires" to exclude certain documents otherwise defined as securities from the protection of the federal securities acts. The problem of determining which documents merit the protection afforded by the securities acts is a "vexing one" and the Seventh Circuit as well as the First, Third, Fifth and Eleventh Circuits have adopted the "commercial/investment" test. Under this test protection of the securities laws is confined to investors and excludes from the act's protection borrowers and lenders engaged in a purely commercial setting. However transactions can fall into grey areas where characterization is difficult. Accordingly, determination of whether a transaction has commercial or investment characteristics cannot be made by a mechanical test, *Hussinger* quoting *CNS Enterprises v. G & G Enterprises*, 508 F.2d 1354 (7th Cir.1975) *cert. denied* 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40, but is to be determined on a case-by-case basis. *Id.*

■ Defendants argue that plaintiff loaned money and in return received bonds secured by the project and accordingly the transaction falls on the commercial side of the rule. However defendants' analysis is flawed because it leaves out the role of the IDFA in the transaction. Avondale borrowed money from the IDFA, not from Van Kampen. Avondale's obligation is to pay the IDFA under its mortgage loan and note. The IDFA obtained the money from Van Kampen by issuing and selling it certain bonds. Van Kampen bought the bonds with the intention of reselling them to the general public. It received as compensation a three percent loan fee and the prospect of obtaining a premium on the sale of the bonds in the event market conditions were such that the interest rate justified it. In the event market conditions were such that the interest rate was not sufficient the bonds would be sold at a discount. Whether the bonds could be sold at par, at a premium, or at a discount would also depend to a certain extent upon the opinions of potential investors that the bonds would or would not be paid on time which in turn would be influenced by the status of the real obligor under the bond,

Avondale.[1]  Since the total security under the bond is revenues received by IDFA from Avondale, the character of Avondale's partners could be material.

Moreover, Van Kampen purchased the bonds for resale to the general public. This is reflected by its status as an "underwriter" in the project financing agreement (ex. 2).  The bonds themselves are negotiable instruments, Ill.Rev.Stat., ch. 48, ¶ 850.07.  Furthermore the reason for the presence of IDFA was for the purpose of issuing tax exempt revenue bonds.  Tax exempt status of revenue bonds enhance their desirability as investments.  These tax exempt revenue bonds have been repeatedly held to be subject to Section 10(b) of the 1934 Act (15 U.S.C. § 78j).  *In re NYC Municipal Securities Litigation*, 87 F.R.D. 572, 576 (S.D.N.Y.1980), and cases cited therein; *Securities and Exchange Commission v. Chas. A. Morris & Assocs., Inc.*, 386 F.Supp. 1327, 1332–33 (W.D.Tenn. 1973).  Here the industrial revenue bonds were backed by the note and mortgage of Avondale.  All bonds are backed by some undertaking.  The critical difference is that revenue bonds are intended as investments and not as a simple commercial transaction.

Defendants have failed to cite any case (and the court has been unable to find any) in which a financial transaction involving the issuance and sale of revenue bonds was excluded from the protection of the 1934 Act.  To extend to this transaction "commercial" statue would be to rewrite Section 10(b) to eliminate the word "bond."  This we have no authority to do.

### B.  Section 9(b)

■  Defendants' second argument is that Van Kampen's complaint should be dismissed because it fails to satisfy the specificity requirements of Rule 9(b), Fed. R.Civ.P.  This rule provides that when fraud is alleged the circumstances shall be stated with "particularity."  The Seventh Circuit in *Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975), set forth the pleading requirements for a securities fraud case:

> Plaintiff's first amended complaint notified defendants of the nature of the claims, Rule 10(b–5) securities fraud, and it alleged the details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants.  This is enough.  More information can be gathered through discovery.

511 F.2d at 508–09.

Here Van Kampen's complaint alleges fraud by omission, that the defendants failed to advise Van Kampen of the conviction of one of its partners.  The complaint alleges specifically that: (1) all defendants had numerous communications with Van Kampen (¶ 11); (2) all defendants knew about Grizaffi's conviction (¶ 15); (3) none of the defendants informed Van Kampen of Grazaffi's conviction (¶ 18); and (4) the withheld information was material to Van Kampen's decision to purchase the bonds (¶ 14).

Defendants contend that the complaint improperly lumps all defendants together and fails to specify time, place and content of the communications that are alleged to be fraudulent.  However the basis for the claim against defendants is the failure to communicate specific information to Van Kampen.  Obviously one cannot specify time, place and content of a communication which has not been made.  The cases cited by defendants are inapposite.  Each case involves failure to allege with particularity allegations of misrepresentation where time, place, speaker and content are necessary to advise a defendant of the charge against him.  The balance of defendants' argument go to the materiality and weight of the non-disclosed fact, i.e., that there could be no conceivable basis upon which a twenty-year old conviction would be material.  Such arguments are better left for the trier of fact or to be raised in a motion for summary judgment.  Accordingly, the motion to dismiss of defendants is denied.

IT IS SO ORDERED.

---

1.  The bond indenture makes this clear; it is not an obligation of the IDFA or the State of Illinois.  The bonds are to be paid solely under the note executed by Avondale (ex. 1, cmplt.).