EAGLE TRIM, INC., and GMAC Business Credit, LLC, Plaintiffs,

v.

EAGLE–PICHER INDUSTRIES, INC., Defendant.

No. 01–CV–74121–DT.

United States District Court, E.D. Michigan, Southern Division.

May 2, 2002.

Thomas B. Radom, Butzel Long, Bloomfield, Hills, MI, for Eagle Trim, Inc.

I.W. Winsten, Miriam H. Marton, Honigman, Miller, Detroit, MI, for GMAC Business Credit, L.L.C.

Susan Artinian, Dykema Gossett, Detroit, MI, for Eagle-Picher Industries, Inc.

## OPINION AND ORDER

DUGGAN, District Judge.

Plaintiffs, Eagle–Trim, Inc. (Trim) and GMAC Business Credit, LLC (GMAC), filed this action on October 30, 2001. Plaintiffs' Complaint alleges: 1) Fraud (Trim) 2) Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, 3) Innocent Misrepresentation (Trim), 4) Breach of Contract, 5) Breach of Guaranty, 6) Fraud (GMAC), and 7) Innocent Misrepresentation (GMAC).

This matter is currently before the Court on Defendant's, Eagle–Picher Industries, Inc. (Picher), Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and Defendant's Motion to Strike Documents and Brief in Opposition. A hearing on these motions was held on April 18, 2002. For the reasons set forth below, the Court shall grant in part, and deny in part, Picher's Motion to Strike and grant in part, and deny in part, Picher's Motion to Dismiss.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted ...." Fed.R.Civ.P. 12(b)(6). Under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995) (citations omitted).

## BACKGROUND

Both Trim and Picher are in the business of automotive supplies. Picher sold its "trim" division to Trim in 1998. Pursuant to this sale, the parties entered into an Asset Purchase Agreement (AP Agreement). The sale of the trim division for $14.5 million was financed by GMAC and Picher. GMAC loaned Trim $12.4 million and Picher loaned Trim $2.1 million. To secure the loan from Picher to Trim, "the two parties executed a Mortgage that encumbered certain property that Trim received." (Def.'s Br. at 2). A Mortgage Note (Note) was also executed, setting payment and default requirements.

Picher also executed a Tooling Guaranty (Guaranty) in favor of GMAC. This Guaranty warranted that $3,975,444.42 of tooling receivables would be collectable for three years and five days. These receivables consisted of $528,729 to be paid under the Full Payment Method, and $3,440,714 to be paid under the Amortized Payment Method.[1] According to the Complaint, some of these tooling receivables were fictitious, prompting this lawsuit.

## DISCUSSION

Picher's Motion seeks dismissal of Counts I, II, III, VI, and VII of the Complaint on several grounds, each of which will be discussed separately below. Initially, the Court must decide Picher's Motion to Strike Documents and Brief in Opposition.

In response to Plaintiffs' Brief in Opposition, Picher filed its Motion to Strike Documents and Brief in Opposition, pursuant to Federal Rules of Civil Procedure 10(c) and 12. Picher argues that this Court may not consider Plaintiffs' exhibits that are "outside" the pleadings, and because Plaintiffs' Brief is entirely "infected" with these exhibits, the Brief itself should be stricken. Picher also argues that the Court should not convert Picher's Motion from a motion to dismiss to a motion for summary judgment.

Federal Rule of Civil Procedure 12(b) provides:

> If, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). Unless the Court converts Picher's Motion to a motion under Rule 56, the Court "may not consider material that exceeds the scope of the complaint." *In re Credit Acceptance Corp. Sec. Litigation,* 50 F.Supp.2d 662 (E.D.Mich.1999).

Picher contends that Plaintiffs' Exhibits A, B, K, L, and M, attached to Plaintiffs' Brief in Opposition, should be stricken and not considered by the Court. These exhibits are: Declaration of Harvey Hewett from Freightliner (A), Declaration of Mark Ruf from GM (B), Eagle Trim Financial Statements (K), Weber, Curtin & Drake's May 3, 2001 Letter (L), and Consent to Assignment (M). Picher contends that Plaintiffs' other exhibits, and Picher's exhibits, may be considered by the Court as "part of the pleadings" because they are "referred to in the plaintiff's complaint and are central to her claim." (Def.'s Mot. to

---

1. Under the Full Payment Method, the customer paid for the tooling when the tooling was completed and invoiced. Under the Amortized Payment Method, the customer pays for the tooling over a period of time through a charge added to the price of parts manufactured for the customer. (*See* Def.'s Br. at 3; Pls.' Br. in Opp'n at 2).

Strike at 2) (quoting *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997)(allowing consideration of documents attached to defendant's motion that were referenced in the complaint and were central to the claim)).[2]

The Exhibits Picher seeks to strike are not referenced in the Complaint. The Court declines, at this early stage in the litigation, to convert Picher's Motion into a motion for summary judgment.[3] Therefore, Plaintiffs' Exhibits A, B, K, L, and M shall be stricken, and not considered by the Court in ruling on Picher's Motion to Dismiss.

Plaintiffs' Brief, however, will not be stricken. Although Plaintiffs do refer extensively in their Brief to the Exhibits in question, Plaintiffs have stated in their Brief in Opposition to Picher's Motion to Strike that their "legal arguments do *not* require reference to any the [sic] evidence plaintiff [sic] submitted with their brief." (Pls.' Br. in Opp'n to Def.'s Mot. to Strike at 1). Therefore, the Court will consider Plaintiffs' arguments without reference to the stricken exhibits.

## I. *Mortgage Note:*

■ Picher contends that the Note involved in this action is not a security under the Securities Exchange Act and therefore Plaintiffs' claim of securities fraud is inappropriate and must be dismissed. Picher asserts that the Note is "an unremarkable document" because it "simply sets a rate of interest and payment schedule and provides procedures for the event of a default." (Def.'s Br. at 5). Picher argues that allowing a securities fraud claim based on this Note "would federalize any transaction, residential or commercial, which involved a mortgage note." (*Id*).

Congress enacted The Securities and Exchange Act of 1934(Act) "to regulate *investments,* in whatever form they are made and by whatever name they are called." *Reves v. Ernst & Young,* 494 U.S. 56, 110 S.Ct. 945, 949, 108 L.Ed.2d 47 (1990)(emphasis in original). The Act defines "security" as:

> The term "security" means *any note,* stock treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance, which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10) (emphasis added). In *Reves,* the Supreme Court stated that "Congress did not, however, 'intend to provide a broad federal remedy for all fraud.' Accordingly, '[t]he task has fallen ... ulti-

---

**2.** Both Picher's and Plaintiffs' other exhibits consist of the AP Agreement, schedules thereto, the Note, the Guaranty, and the Mortgage.

**3.** The Court notes that Plaintiffs have not requested that Picher's Motion be converted into a motion for summary judgment.

mately to the federal courts to decide which of the myriad financial transactions in our society come within the coverage of these statutes.'" *Reves,* 110 S.Ct. at 949 (citations omitted).

The Court held that a "note is presumed to be a 'security,'" but this presumption may be rebutted with the "family resemblance" test the Court adopted.[4] *Id.* at 952. This test begins with a list of notes that are considered to not be a security under the Act:

> notes delivered in consumer financing, notes secured by a mortgage on a home, notes secured by a lien on a small business or some of its assets, notes relating to a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivables, notes which formalize an open-account indebtedness incurred in the ordinary course of business, and notes given in connection with loans by a commercial bank to a business for current operations.

*Bass v. Janney Montgomery Scott, Inc.,* 210 F.3d 577, 585 (6th Cir.2000)(citing *Reves,* 110 S.Ct. at 945). Then a four factor test is used to determine "first, whether a note bears a resemblance to one of the identified seven instruments, and second, whether an additional category should be added to the list." *Bass,* 210 F.3d at 585. The first factor is an examination of "the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it." *Reves,* 110 S.Ct. at 951. The second factor is an examination of "the 'plan of distribution' of the instrument, to determine whether it is an instrument in which there

is 'common trading for speculation or investment.'" *Id.* at 952 (citation omitted). The third factor involves an examination of "the reasonable expectations of the investing public[.]" *Id.* The fourth factor is an examination of "whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Act unnecessary." *Id.*

### A. *Motivation:*

Picher contends that "[t]he motivation of both buyer and seller in this case was simply to facilitate the sale of assets from Eagle–Picher to Trim ...." (Def.'s Br. at 6). In discussing this factor, the *Reves* Court stated:

> If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a "security." If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, *or to advance some other commercial or consumer purpose,* on the other hand, the note is less sensibly described as a "security."

*Reves,* 110 S.Ct. at 952 (emphasis added) (citation omitted). At the hearing, Picher's counsel argued that Picher's motivation was to sell its trim division, not to invest in the division. In support of such argument, counsel directed the Court's attention to the Complaint, which states the

---

**4.** Plaintiffs argue that application of this test involves questions of fact that cannot be decided at this stage of litigation. Plaintiffs, however, have not cited any cases holding that the *Reves* factors cannot be applied in the context of a motion to dismiss rather than a motion for summary judgment. Picher, however, does cite to *Prochaska & Associates v.*

*Merrill Lynch,* 798 F.Supp. 1427 (D.Neb. 1992), in which the court applied the *Reves* test under a motion to dismiss pursuant to Rule 12(b)(6). *See id.* at 1429. The Court agrees with Picher that the *Reves* test is applicable here pursuant to Picher's Rule 12(b)(6) Motion.

Note was executed "to finance" the purchase of the trim division. (Def.'s Br. at 7 (citing Compl. at ¶ 14)). In this Court's opinion, the Note was executed to advance a commercial purpose, *i.e.*, Trim's purchase of Picher's trim division. Picher further argues that the Note, which encumbered Trim's property, bears "a 'strong family resemblance' to a 'note secured by a mortgage on a home, [or a] short-term note secured by a lien on a small business or some of its assets.'" (Def.'s Br. at 7 (quoting *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1138 (2d Cir.1976))). The Court agrees.

Plaintiffs argue that "it appears that Eagle–Picher obtained the Note as an investment in Eagle Trim's business." (Pls.' Br. in Opp'n at 18). Because Picher subordinated its repayment right to GMAC, Plaintiffs argue that Picher could only receive payment if "Trim successfully operated the business at a level that could service its" GMAC debt. (*Id*). Thus, Picher "was effectively investing in the business ...."[5] (*Id*). The Court disagrees with this analysis.

Any loan, commercial or consumer, can be categorized as an "investment" under Plaintiffs' analysis. The repayment of any loan rests on the business or consumer "successfully operating at a level" that enables it to "service" the entity's other priorities. This fact alone cannot, in this Court's opinion, turn a loan into an investment. The Note and loan involved in this case serve, as the *Reves* Court stated, "to advance some other commercial ... purpose." *Reves*, 110 S.Ct. at 952. The fact that there is a mortgage encumbering Trim's property, in this Court's opinion, leads to the Note resembling a note secured by a mortgage on a home. There-

fore, the motivation factor is in favor of this Note not being a security.

**B. *Plan of Distribution:***

In discussing this factor, the *Reves* Court stated, in regard to the notes in question in that case, that the notes were "offered and sold to a broad segment of the public, and that is all we have held to be necessary to establish the requisite 'common trading' in an instrument." *Reves*, 110 S.Ct. at 953 (citation omitted). Picher argues that Plaintiffs do not allege that the Note was offered to any other party, that there was any common trading, or that the Note was exchanged for speculation or investment purposes. Furthermore, the Note was "nothing more than a promise to repay money loaned to facilitate the purchase of assets;" therefore there was no distribution plan for it. (Def.'s Br. at 8). The Court agrees. There was no plan of distribution for the Note, and there is no reason to think there could have been one.

Plaintiffs argue that a "debt instrument may be distributed to only one investor, yet still be a security." (Pls.' Br. in Opp'n at 18 (citing *National Bank of Yugoslavia v. Drexel Burnham Lambert, Inc.*, 768 F.Supp. 1010, 1015–1016 (S.D.N.Y.1991))). The case cited by Plaintiffs involved "time deposits" made by the National Bank of Yugoslavia for investment purposes. Although the Court does not disagree with Plaintiffs' assertion that a "security" may be distributed to only one investor, the Court does not believe *National Bank of Yugoslavia* is persuasive in establishing that the Note involved in this case is a security.

Plaintiffs cite four other cases that Plaintiffs contend "have held that a mort-

---

**5.** Although Plaintiffs' Brief states "Eagle Trim was effectively investing in the business[,]" it is apparent from the context that the state-ment should state "Picher was effectively investing ...."

gage note should be treated as a security." (Pls.' Br. in Opp'n at 17 (citing *United States v. Farris*, 614 F.2d 634 (9th Cir. 1979); *Van Kampen Merritt, Inc. v. Avondale Properties Partnership, et al.*, 702 F.Supp. 1412 (N.D.Ill.1989); *Wright v. Downs*, 1992 U.S.App. LEXIS 17384, 1992 WL 168104 (6th Cir.1992); and *Movielab, Inc. v. Berkey Photo, Inc., et al.*, 452 F.2d 662 (2d Cir.1971))).

Three of these cases, *Farris, Van Kampen Merritt*, and *Movielab*, however, predate the Supreme Court's *Reves* decision, and are therefore not persuasive or relevant to the *Reves* analysis. The fourth case, *Wright*, involved over 200 investors, a church, and the notes being offered to the public through eight television channels. *See Wright*, 1992 U.S.App. LEXIS 17384 at *2–3, 1992 WL 168104 at *3. The facts involved in *Wright* are not in any way similar to the facts involved in the case at bar; therefore the Court is not persuaded by the court's holding in *Wright*. This factor also, in this Court's opinion, leans towards finding the Note to not be a security under the Act.

### C. *Investing Public's Perception:*

With respect to this factor, Plaintiffs contend that "at this stage of the proceedings, there has not yet been any factual development as to what the public's reasonable expectations were as to the Note. Therefore, this factor does not assist Eagle–Picher." (Pls.' Br. in Opp'n at 18). This Court disagrees.

Plaintiffs' Complaint asserts that this transaction was a loan. Trim "borrowed $2,100,000 from Eagle–Picher, and executed ... a Mortgage Note dated November 24, 1998 ...." (Compl. at ¶ 14(a)). The Note which Plaintiffs refer to [6] is a basic promissory note requiring payment of the loan over a ten-year period at specified interest. There is no allegation in the Complaint, nor any other document made a part of the pleadings, including the Note that would suggest that this was an "investment" rather than a traditional borrower/lender commercial setting.

Explaining the distinction between stock and a note, the Supreme Court in *Reves, supra*, stated:

> an instrument bearing the name "stock" that, among other things, is negotiable, offers the possibility of capital appreciation, and carries the right to dividends contingent on the profits of a business enterprise is plainly within the class of instruments Congress intended the securities laws to cover.

> \* \* \* \* \* \*

> Even if sparse exceptions to this generalization can be found, the public perception of common stock as the paradigm of a security suggests that stock, in whatever context it is sold, should be treated as within the ambit of the Acts.

> \* \* \* \* \* \*

> While common stock is the quintessence of a security, and investors therefore justifiably assume that a sale of stock is covered by the Securities Acts, the same simply cannot be said of notes, which are used in a variety of settings, not all of which involve investments.

*Reves*, 110 S.Ct. at 949–50 (internal citations omitted).

In this Court's opinion, viewing the allegations in the Complaint and supporting documents, this Court does not believe that there could be any "public perception" that the Note involved in this case was an investment similar to a sale of stock, rather than a note used in a standard borrower/lender commercial setting. Therefore, this factor favors a conclusion that the Note is not a security.

---

**6.** This Note is Exhibit H to Plaintiffs' Brief in Opposition.

## D. *Risk Reducing:*

Picher argues that because the Note is secured by a mortgage on Trim's property and because the mortgage "explicitly invokes the remedies of Michigan's Uniform Commercial Code upon default[,]" the risk involved with this note is reduced, and this factor weighs in favor of the Note not being a security. (Def.'s Br. at 9 (citing *Bass, supra* )). In *Bass,* the Sixth Circuit stated that "the existence of collateral is significant as a risk-reducing factor ...." *Bass,* 210 F.3d at 585. In this Court's opinion, the fact that this Note was secured by a mortgage on Trim's property leads to this factor also weighing against the Note being a security.

Because Picher has filed a counterclaim for the full amount of the Note, Plaintiffs argue that the risk here was not reduced by the mortgage. This argument is without merit. The fact that Picher has now filed a counterclaim for the full value does not mean that the mortgage did not *reduce* Picher's risk.[7]

In this Court's opinion, application of the *Reves* analysis to the Note leads to the determination that the Note is not a security under the Act. Therefore, Plaintiffs' securities claim under Count II must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[8] Because the Securities Fraud claim is being dismissed, the Court need not discuss Picher's arguments regarding the sufficiency of Plaintiffs' pleadings on this claim.

## II. *Fraud and Innocent Misrepresentation Claims:*

Picher contends, for a variety of reasons, that Plaintiffs' Fraud and Innocent Misrepresentation claims are improper and should be dismissed.

### A. *Tort/Breach of Contract:*

■ Picher contends that Plaintiffs' Fraud and Innocent Misrepresentation claims are "legally indistinguishable from the breach of contract allegations[,]" therefore the tort claims are improper and must be dismissed. The Michigan Supreme Court has held that a tort claim is proper in the context of a contractual relationship only when there is "some breach of duty distinct from breach of contract." *Hart v. Ludwig,* 347 Mich. 559, 563, 79 N.W.2d 895 (1956). Picher compares the contract allegations with the tort allegations in Plaintiffs' Complaint and asserts that the two are indistinguishable. The Court disagrees.

■ Although the allegations in the Complaint are similar for the contract and tort claims, the ·tort allegations did not arise out of the parties' contractual duties, or during performance of those duties. Rather, the alleged fraud and innocent misrepresentation occurred before the parties entered into the contract. Any legal duty Picher had to not misrepresent or

---

7. Plaintiffs also contend that the Note "may be a security even if it is secured by a mortgage." (Pls.' Br. in Opp'n at 19). The Court does not disagree with this statement. The analysis above does not state that a note may not be a security because of a mortgage; however, the existence of the mortgage is significant in evaluating this factor.

8. In all the cases cited by the parties and others reviewed by the Court dealing with "securities fraud," it was the plaintiff/lender who was the "victim" of the securities fraud.

In this case, the alleged "victim" is the borrower. Although the securities claim in this case is brought under 15 U.S.C. § 78j(b) and Rule 10b-5, both of which deal with "employment of manipulative and deceptive devices ... in connection with the *purchase or sale* of any security[,]" 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5 (emphasis added), it is difficult for this Court to conceive of how the borrower could successfully contend that the alleged "securities fraud" was a proximate cause of harm to the borrower.

fraudulently induce Plaintiffs into executing the contract did not arise out of any contractual duties between the parties.

Trim's fraud claim alleges that Picher misrepresented facts related to its trim division with the intention that Trim would act upon these statements, and Trim then relied on these statements to its detriment. (*See* Compl. at ¶ 21). Trim's breach of contract claim alleges that Picher, under the AP Agreement, "agreed" that, among other things, the tooling receivables existed and would be transferred to Trim as part of the AP Agreement, but then breached the AP Agreement because these tooling receivables, and other things agreed to, did not exist, and were not delivered as promised. (*See* Compl. at ¶¶ 33 and 34). The Innocent Misrepresentation claims are similarly distinct from the Breach of Contract claim. Therefore, the alleged tort/fraud claim is distinct from the breach of contract claim.

### B. *Future Promises:*

█ Picher next contends that Plaintiffs' fraud claims should be dismissed because of the general rule "that fraud cannot be predicated upon a representation concerning a future event." (Def.'s Br. at 12 (quoting *Link v. Leadworks Corp.,* 79 Ohio App.3d 735, 607 N.E.2d 1140, 1145 (1992))). Picher's argument is without merit. Plaintiffs' Fraud claims are not based on Picher's promise concerning a future event; rather they are based on Picher's representation concerning a present fact. The Fraud claim is based on the fact that the tooling receivables, which were to be collected in the future, did not exist. Although this pertains to receivables collectable in the future, the allegedly fraudulent statements were made regarding a present fact, *i.e.,* the existence of the tooling receivables. Therefore, Picher's argument fails because the alleged

fraud dealt with a present fact, not a future promise.

A fraud claim can be based on a future promise if at time of "promise" the promisor had no intention of fulfilling it. *See Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 337–38, 247 N.W.2d 813 (stating "a fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance.")(citing *Crowley v. Langdon,* 127 Mich. 51, 58–59, 86 N.W. 391 (1901)). Certainly a fair reading of Plaintiffs' Complaint alleges that because Picher "promised" receivables that did not exist, Picher had no intention of fulfilling the promise when it was made.

### C. *Economic Loss Doctrine:*

Picher next contends that the Economic Loss Doctrine prohibits Plaintiffs from claiming their pecuniary losses under fraud and innocent misrepresentation claims. Picher cites various cases to support its argument. However, all of these cases, except one, deal with application of the doctrine in disputes involving goods. The one case cited that does not involve goods is a case in which Arizona law was applied. Arizona law is irrelevant in this case. Picher has not persuaded this Court that Plaintiffs' fraud claims are barred by the Economic Loss Doctrine.

### III. *Rule 9(b):*

Picher contends that Plaintiffs' Complaint fails the particularity requirements of Federal Rule of Civil Procedure 9(b). The Court is satisfied that the Complaint meets the requirements of Rule 9(b). To the extent Picher feels it needs more information with respect to any specifics of Plaintiffs' claims, Picher can obtain this information by way of interrogatories. Therefore, the Court shall deny Picher's Motion as to Rule 9(b).[9]

---

9. Furthermore, the Sixth Circuit, in *Coffey v.*

*Foamex L.P.,* 2 F.3d 157 (6th Cir.1993), stated

## IV. *GMAC's Innocent Misrepresentation Claim:*

 Picher contends that GMAC cannot maintain an Innocent Misrepresentation claim because it lacks privity of contract. The Michigan Supreme Court has held that:

A claim for innocent misrepresentation is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation. While it is unnecessary to prove that the person making the representation had knowledge that the statements were false, it is necessary to show privity of contract.

*Forge v. Smith*, 458 Mich. 198, 212, 580 N.W.2d 876 (1998) (citation omitted).

Picher asserts that the allegations contained in the Complaint regarding GMAC's Innocent Misrepresentation claim deal with the AP Agreement, which was between Picher and Trim, that the alleged misrepresentations were made by Picher to Trim, and that there is no allegation in the Complaint that GMAC is in privity. The Court disagrees.

Picher contends that "[t]he fact that [ ]Picher and GMAC may have entered into other agreements that referenced the Agreement does not automatically make GMAC a party to the Agreement." (Def.'s Rep. Br. at 5). Picher cites *Sheldon Co. Profit Sharing Plan and Trust v. Smith*, 858 F.Supp. 663 (W.D.Mich.1994), to support its contention. In *Sheldon*, the court held that privity did not exist between the parties involved because "[p]laintiffs make no claim that any misrepresentations or

omissions by defendants were made in connection with the creation or fulfillment of the" agreement in question. *Id.* at 670. In the case at bar, however, Plaintiffs allege in the Complaint that Picher "made the Representations *in connection with* the [AP] Agreement *and the related transactions* [.]" (Compl. at ¶ 51(a))(emphasis added). The "related transactions" includes the Guaranty Picher executed in favor of GMAC. In this Court's opinion, this allegation is a sufficient allegation of privity to withstand Picher's Rule 12(b)(6) Motion.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Strike is **GRANTED** as to Exhibits A, B, K, L, and M to Plaintiffs' Brief in Opposition, and **DENIED** as to Plaintiffs' Brief in Opposition.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **GRANTED** as to Count II of Plaintiffs' Complaint, and Count II of the Complaint is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **DENIED** in all other respects.

---

that dismissal was improper in that case even though Rule 9(b)'s requirements had not been met because defendants had not moved for a

more definite statement under Rule 12(e). *See id.* at 162. Similarly, in this case, Picher has not moved under Rule 12(e).